**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| DANIELLE BROWN AND ROY BROWN, *on behalf of themselves and all similarly situated consumers*, <br><br> Plaintiffs, <br><br> v. <br><br> STAR 214, LLC and STATEBRIDGE COMPANY, LLC, <br><br> Defendants. | Civil Action No. 1:24-cv-1964 |

## CLASS ACTION COMPLAINT

Plaintiffs Danielle Brown and Roy Brown, on behalf of themselves and all similarly situated consumers, file this Complaint against Defendants Star 214, LLC and Statebridge Company, LLC and allege as follows:

## PRELIMINARY STATEMENT

1.      Mr. and Mrs. Brown purchased their home in Loudon County, Virginia in April 2001.

2.      In March 2005, Mr. and Mrs. Brown took out a second mortgage to help pay down some debt and complete some renovations to the home.

3.      Several years later, Mr. and Mrs. Brown experienced financial difficulties after a job loss.

4.      At that time, Nationstar serviced both of their mortgages.

5.      They immediately reached out to Nationstar to try and make sure that they could stay in their home, where they lived with their three children.

6.      Ultimately, Mr. and Mrs. Brown modified their first mortgage.

7.      At the time, they believed that their modification also resolved their second mortgage—throughout the modification process, Mr. and Mrs. Brown repeatedly asked about their second mortgage, and Nationstar told them that their second mortgage was "taken care of."

8.      Mr. and Mrs. Brown made the last payment on their second mortgage in January 2013, and stopped receiving monthly mortgage statements around that time, reinforcing their belief that the second mortgage was resolved.

9.      Mr. and Mrs. Brown didn't hear anything about their second mortgage for years.

10.      Unbeknownst to Mr. and Mrs. Brown, their first-mortgage modification didn't resolve their second mortgage. Instead, Nationstar charged off their loan and sold it to another lender.

11.      Mr. and Mrs. Brown's second mortgage was sold to one or more lenders over the years and was eventually purchased by Star 214 in November 2021.

12.      Star 214 transferred the servicing rights to the loan to Statebridge in June 2022.

13.      Mr. and Mrs. Brown did not receive any monthly mortgage statements for their second mortgage between early 2013 and June 2022.

14.      At some point after June 2022, Statebridge started sending Mr. and Mrs. Brown monthly mortgage statements.

15.      But these monthly mortgage statements sought to collect a vastly inflated amount from Mr. and Mrs. Brown.

16.      For example, these monthly mortgage statements included interest charges for time periods when Mr. and Mrs. Brown were not receiving monthly mortgage statements.

17.      And now, Star 214 and Statebridge are seeking to foreclose on Mr. and Mrs. Brown's home, for tens of thousands of dollars more than they owe.

18.     For example, the last disclosed balance of Mr. and Mrs. Brown's second mortgage was $99,263.00 in 2013. And even though Mr. and Mrs. Brown didn't receive monthly statements for approximately ten years, Star 214 and Statebridge now claim that they must pay $161,035.14 to pay off their loan.

19.     Upon information and belief, a large portion of this amount is composed of interest charges that were not allowed unless Mr. and Mrs. Brown were being sent monthly mortgage statements.

20.     Because Star 214's and Statebridge's charging of interest during times in which consumers were not sent monthly statements appears to be their standard policy and practice, Mr. and Mrs. Brown allege a class claim against Star 214 and Statebridge for making false and misleading representations about the amount of their second mortgage in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e.

21.     Mr. and Mrs. Brown also allege individual claims against Star 214 and Statebridge for the Defendants' improper servicing of their loan, including under the FDCPA, § 1692f, for threatening foreclosure of their home when there was no present right to possession of the property, breach of contract, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(2), for failing to properly respond to their Qualified Written Request.

## JURISDICTION AND VENUE

22.     This Court has federal question jurisdiction under 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1692k. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

## PARTIES

23.    Mr. and Mrs. Brown are natural people who live in Loudoun County, Virginia. They are consumers as defined by 15 U.S.C. § 1692a(3).

24.    Star 214 is a foreign limited liability company incorporated in Delaware with a principal place of business in Miami, Florida. At all times relevant to this lawsuit, Star 214 acted a debt collector under the FDCPA because it uses interstate commerce in its business, the principal purpose of which is debt collection. 15 U.S.C. § 1692a(6); *see also Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), *aff'd,* 582 U.S. 79, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017).

25.    Upon information and belief, most of Star 214's business and principal purpose is purchasing previously charged off and defaulted second mortgages on the secondary loan market for nominal amounts and then seeking to recover the full amounts from consumers—in other words, debt collection.

26.    In conducting its debt collection business, Star 214 uses interstate commerce, including the mail, when it and its agents send communications to consumers attempting to collect debts from them.

27.    Star 214's business also involves interstate commerce because, upon information and belief, its purchases mortgage assets across the United States.

28.    Statebridge is a foreign limited liability company with its principal place of business in Highlands Ranch, Colorado. Statebridge is a mortgage loan servicing company governed by RESPA.

29.    Statebridge is also a debt collector under the FDCPA because it treated Mr. and Mrs. Brown's loan as in default at the time it acquired the loan's servicing rights. *See Bridge v.*

*Ocwen Fed. Bank, FSB*, 681 F.3d 355,362 (6th Cir. 2012); *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 537–38 (7th Cir. 2003).

## FACTS

### *Zombie Second Mortgages*

30.    This case arises from the recent wave of attempts to collect "zombie" second mortgages—largely, subprime second mortgages originated before the 2007–08 mortgage crisis.

31.    During the Great Recession, many borrowers were required to modify their first mortgages to remain in their homes, while their second mortgages were charged off or significantly reduced or forgiven as part of the HAMP Second Lien Modification Program ("2MP Program"). *See* https://www.hud.gov/sites/documents/MAY2014MHAREPORTFINAL.PDF ("Provides modifications and extinguishments on second liens when there has been an eligible first lien modification on the same property) (last visited Oct. 21, 2024).

32.    Once charged off or extinguished, consumers no longer received statements or heard anything about their second mortgages, sometimes for more than a decade, like Mr. and Mrs. Brown.

33.    Because charge-offs or cancellations typically happened around the time that consumers modified their first mortgages, many believed that the modification of their first mortgage also resolved their second mortgage—a belief that was perpetuated by the fact that consumers no longer received statements relating to their second mortgages.

34.    Statements, of course, are an important tool that empower consumers with critical information about their account, including the loan balance and accruing interest charges. Statements are especially critical when consumers are at risk of losing their home through foreclosure.

35.    For this reason, the Consumer Financial Protection Bureau ("CFPB") has stated that times of default are "precisely when a consumer most needs the periodic statement" to "document fees and charges to the consumer." [1]    Simply put, "as long as such charges may be assessed, the consumer is entitled to receive a periodic statement."[2]

36.    The CFPB has also identified the same issue with servicers like Star 214 and Statebridge assessing interest and fees on long-dormant mortgages for periods in which they failed to provide monthly statements to consumers:[3]

> Leading up to the 2008 financial crisis, many lenders originated mortgages to consumers without considering their ability to repay the loans. … One common piggyback mortgage product, known as an 80/20 loan, involved a first lien loan for 80 percent of the value of the home and a second lien loan for the remaining 20 percent of the valuation. … [In the event of default,] the second mortgage holder only receives proceeds from the foreclosure sale if there are any funds left after paying off the first mortgage. As a result, many second mortgage holders of piggyback loans, recognizing that a foreclosure would not generate enough money to cover even the first mortgage, charged their defaulted loans off as uncollectible and ceased communicating with the borrowers. … Many borrowers, having not received any notices or periodic statements for years, concluded that their second mortgages had been modified along with the first mortgage, discharged in bankruptcy, or forgiven. In recent years, as home prices have increased and borrowers have paid down their first mortgages, after years of silence, some borrowers are hearing from companies that claim to own or have the right to collect on their long-dormant second mortgages. These companies often demand the outstanding balance on the second mortgage, plus fees and interest, and threaten to foreclose if the borrower does not or cannot pay.

37.    Unbeknownst to many consumers, however, their second mortgages did not go away.

---

[1] 12 C.F.R. Part 1026 (CFPB Official Interpretations), https://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-tila.pdf (last visited Oct. 2, 2024).

[2] *Id.*

[3] Consumer Financial Protection Bureau, Advisory Opinion re: 12 C.F.R. Part 1006 (2023), https://files.consumerfinance.gov/f/documents/cfpb_regulation-f-time-barreddebtadvisory-opinion_2023-04.pdf.

38.    Instead, they were sold—often several times—to various debt buyers and subprime lenders.

39.    Now, with the recent surge in housing prices, consumers have significant equity in their homes that make charged-off second mortgages highly profitable.

40.    Debt collectors, like Star 214 and Statebridge, are now seeking to collect on defaulted second mortgages and, if consumers cannot pay, debt buyers are foreclosing on homes, selling the property, and taking the (often significant) equity to pay the outstanding loan.

41.    This highly profitable scheme has surged in recent months, as home prices have increased and COVID foreclosure moratoriums have expired.

42.    Even worse, debt collectors are not collecting the amount due on the mortgages when they are charged off, as the law requires.

43.    To avoid the exact circumstance Plaintiffs now face, the Truth in Lending Act ("TILA") and its enacting regulations ("Regulation Z") require creditors like Star 214 and the servicers like Statebridge who work on their behalf to send monthly statements to borrowers. *See* 15 U.S.C. § § 1638(f) ("The creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement . . . ."); 12 C.F.R. § 1026.41(a)(2) (requiring periodic statements for closed-credit residential mortgage loans).

44.    TILA also allows creditors and servicers to charge off a mortgage. Once a mortgage is charged off, the servicer is no longer required to send monthly statements, but it cannot assess any additional late fees or interest on the account. 12 C.F.R. § 1026.41(e)(6)(i).

45.    Instead, the servicer may resume charging interest and fees on the account only if it resumes sending monthly statements, but it may not retroactively assess any fees or interest for the time during which statements were not sent. 12 C.F.R. § 1026.41(e)(6)(ii).

46.     Yet servicers are retroactively assessing late fees and adding interest to the loans—amounts that were waived by the prior loan servicers—and are seeking to collect vastly inflated amounts from consumers.

47.     In Mr. and Mrs. Brown's case, for example, their loan balance increased by more than $60,000 because of improper fees and charges.

48.     When debt collectors, like Star 214 and Statebridge, can foreclose on properties and collect these improper charges, it not only robs the consumers of their homes, but it also strips them of tens of thousands of dollars in equity—one of the primary ways that low-income and middle-class families can build wealth.

### Mr. and Mrs. Brown's Zombie Second Mortgage

49.     Mr. and Mrs. Brown purchased their home in Loudoun County, Virginia in April 2001, where they have raised their three children.

50.     In March 2005, Mr. and Mrs. Brown took out a second mortgage to help pay down some debt and complete some renovations to their home.

51.     In November 2010, Mr. and Mrs. Brown modified their second mortgage. At that time, the outstanding principal balance was $99,263.00.

52.     A few years later, Mr. and Mrs. Brown experienced financial difficulties after a job loss.

53.     At that time, Nationstar serviced both of their mortgages.

54.     Mr. and Mrs. Brown immediately reached out to Nationstar to make sure that they could stay in their home.

55.     Ultimately, Mr. and Mrs. Brown modified their first mortgage.

56.    At the time, they believed that their modification also resolved their second mortgage—throughout the modification process, Mr. and Mrs. Brown repeatedly asked about their second mortgage, and Nationstar told them that their second mortgage was "taken care of."

57.    Mr. and Mrs. Brown made the last payment on their second mortgage in January 2013, and stopped receiving monthly mortgage statements around that time, reinforcing their belief that the second mortgage was resolved.

58.    Mr. and Mrs. Brown didn't hear anything about their second mortgage for years.

59.    Unbeknownst to them, upon information and belief, Nationstar transferred their second mortgage to NSM Recovery, Inc., a debt collection subsidiary of Nationstar Mortgage, LLC.

60.    Several years after their loan modification, Mr. and Mrs. Brown received a call from a company called Veripro Solutions (formerly known as NSM Recovery, Inc.). During this call, Veripro told them that there was an outstanding balance on their second mortgage.

61.    Mr. and Mrs. Brown informed Veripro that their second mortgage was included in their loan modification.

62.    Mr. and Mrs. Brown also called Nationstar, who assured them that the loan had been charged off and that they did not need to worry about any outstanding balance on the second mortgage.

63.    Unbeknownst to Mr. and Mrs. Brown, their mortgage was sold to Star 214 in November 2021.

64.    Upon information and belief, charged off second mortgages that were previously owned by Nationstar or its subsidiaries were bundled and sold after to various entities beginning with "Star", such as "Star 211," "Star 212," "Star 213," "Star 214,"  etc.

65.     Mr. and Mrs. Brown did not receive any notice that their loan had been transferred to Star 214.

66.     Star 214 later transferred the servicing of Mr. and Mrs. Brown's loan to Statebridge in June 2022.

67.     Several months after Statebridge started servicing Mr. and Mrs. Brown's second mortgage, Statebridge started sending Mr. and Mrs. Brown monthly mortgage statements.

68.     However, these monthly mortgage statements were inaccurate.

69.     For example, on November 20, 2023, Statebridge sent Mr. and Mrs. Brown a monthly mortgage statement that stated that the total amount due to bring their loan current was $110,471.14.

70.     This correspondence was a demand for payment because it included, for example, the amount of the debt, described how the debt could be paid, and provided payment instructions.

71.     This amount was incorrect because it included interest that had been assessed during the time that Mr. and Mrs. Brown were not receiving monthly statements.

72.     Statebridge continued to send Mr. and Mrs. Brown a monthly mortgage statement each month, and each of these monthly mortgage statements contained similar inaccurate payment amounts that included retroactively assessed interest charges.

73.     Each of these statements was a demand for payment that listed a materially incorrect amount because it included interest that Mr. and Mrs. Brown did not owe.

74.     In December 2022, Star 214 and Statebridge, through their attorney, sent Mr. and Mrs. Brown a pre-acceleration notice, which stated that they needed to pay $182,237.21 by January 25, 2023 or their home would be referred to foreclosure.

75.     This pre-acceleration notice stated that the principal balance of the loan was $95,476.50, with interest of $86,571.71 and fees of $189 due on the loan.

76.     This pre-acceleration notice was defective because it included interest that was assessed during the time that Mr. and Mrs. Brown were not receiving monthly mortgage statements.

77.     In June 2024, Star 214 and Statebridge, through their attorneys, sent Mr. and Mrs. Brown a letter stating that the total amount of their debt was $155,559.43. This letter included instructions on how to dispute the debt.

78.     Then, on July 24, 2024, Statebridge sent Mr. and Mrs. Brown a letter stating that Star 214 had started foreclosure on their home and to call for assistance if they wanted to save their home.

79.     After receiving this foreclosure notice, Mr. and Mrs. Brown wrote to the attorney and requested that the debt be validated.

80.      In response to this validation request, Star 214's and Statebridge's attorney sent Mr. and Mrs. Brown a letter dated August 5, 2024, which included documentation showing that the total amount due on the loan through May 16, 2022 was only $95,476.50—showing that Statebridge retroactively assessed interest to the loan when it started servicing it in June 2022.

81.     On August 9, 2024, Statebridge sent Mr. and Mrs. Brown a letter stating that a foreclosure sale had been scheduled for August 15, 2024 and that they needed to contact Statebridge immediately to save their home from foreclosure.

82.     This statement was false. No foreclosure sale for Mr. and Mrs. Brown's property was ever scheduled for August 15, 2024. Upon information and belief, this letter was sent to threaten and intimidate Mr. and Mrs. Brown into making an immediate payment on their loan.

83.    To try and get additional information about their second mortgage and why the balance was so high, Mr. and Mrs. Brown sent Statebridge a Qualified Written Request in August 2024.

84.    This letter contained all the necessary information to be considered a Qualified Written Request, including Mr. and Mrs. Brown's personal information and the loan information, and was sent to the address that Statebridge has designated for Qualified Written Requests.

85.    Mr. and Mrs. Brown's Qualified Written Request disputed the amount of interest that Statebridge had assessed to the loan and asked that Statebridge remove any interest, fees, or charges from 2013 until 2023—the time in which no one ever sent them monthly statements for the loan.

86.    Mr. and Mrs. Brown's Qualified Written Request also disputed any scheduled foreclosure of their home because they had not received any foreclosure notices.

87.    Mr. and Mrs. Brown's Qualified Written Request also asked Statebridge to send them documents to support their dispute including: (1) all monthly statements for the loan since 2013; (2) any acceleration notices for the loan; (3) any foreclosure notices and proof of mailing; (4) all servicing notes for the loan; (5) confirmation of the loan owner and when they became the owner of the loan; (6) the loan account history, including when interest and fees were assessed to the loan; and (7) copies of any invoices supporting any charges to the loan.

88.    Then, on August 14, 2024, Mr. and Mrs. Brown received a letter from Star 214's and Statebridge's attorney stating that a foreclosure sale of their property would occur on October 16, 2024 unless they paid $115,652.26 to reinstate their loan.

89.    Again, the amount listed on this letter was false because it included retroactively assessed interest that Mr. and Mrs. Brown did not owe.

90. In addition, no foreclosure sale was appropriate because the loan had not been properly accelerated.

91. Statebridge responded to Mr. and Mrs. Brown's Qualified Written Request on October 1, 2024.

92. Statebridge's response was deficient in several respects.

93. For example, Statebridge refused to remove any interest assessed to the account and instead stated that it had already adjusted the amount due for the time that statements were not sent out.

94. But this statement was incorrect. No adjustment had been made, and certainly not one that removed all of the interest between January 2013 and 2023, which is the time when Mr. and Mrs. Brown were not receiving monthly mortgage statements.

95. Instead, Statebridge still sought to collect the interest that accrued between January 2013 and 2023, evidenced by Statebridge's assertion in the QWR response that the amount needed to bring the loan current was $116,035.14 and the payoff amount for the loan was $161,035.14.

96. In response to his QWR, Statebridge also refused to provide many of the documents that Mr. and Mrs. Brown requested, including the servicing notes, any monthly statements before 2022, when Star 214 purchased the loan, and any invoices support the fees assessed to the loan.

97. Because of Star 214's and Statebridge's conduct, Mr. and Mrs. Brown have suffered actual damages, including significant loss of equity in their home, emotional distress caused by the fear of losing a home where they has lived for almost 20 years, and informational injury.

### COUNT ONE:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e(10)
### (Class Claim Against Star 214)

98. Mr. and Mrs. Brown incorporate the preceding allegations.

99.     Under Federal Rule of Civil Procedure 23, Mr. and Mrs. Brown bring this action for themselves and on behalf of the following class:

> All consumers: (1) with a loan that was in default at the time Star 214 became the owner of the loan; (2) to whom Star 214 or its agent sent correspondence in the one year predating the filing of this lawsuit; (3) seeking to collect late fees, default-related fees or interest assessed by Star 214 or its agent for time periods when the consumer did not receive monthly statements.

100.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Mr. and Mrs. Brown allege that the class members are so numerous that joinder of all is impractical. Upon information and belief, Star 214 owns thousands of non-performing loans and subjects all of them to the same procedures for the assessment of interest, default charges and late fees. Star 214's records (or the records of its agents) will also show whether or not monthly statements were sent to a class member. The class members' names and addresses are identifiable through Star 214's internal business records, and they may be notified of this litigation by published or mailed notice.

101.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Star 214 is a debt collector; (2) whether Star 214 violated § 1692e of the FDCPA by making false representations about Mr. and Mrs. Brown's and putative class members' debts; and (3) the appropriate amount of statutory damages.

102.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Mr. and Mrs. Brown's claims are typical of the claims of each putative class member. They are also entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

103. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Mr. and Mrs. Brown are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. Mr. and Mrs. Brown have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. Mr. and Mrs. Brown and their counsel will fairly and adequately protect the putative class members' interests. Neither the Browns nor their counsel have any interests that might cause them to not vigorously pursue this action.

104. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Star 214's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

105. Star 214 violated § 1692e(10) of the FDCPA by using false representations to collect or attempt to collect debts from Mr. and Mrs. Brown and the putative class members.

106.    For example, Star 214 falsely represented that Mr. and Mrs. Brown and the putative class members owed late fees and interest for the months that they were not sent monthly statements.

107.    Star 214's statements were false. Mr. and Mrs. Brown and the putative class members did not owe these late fees or interest because they were not sent monthly statements.

108.    Mr. and Mrs. Brown and each putative class member suffered a concrete injury in fact because of Star 214's misrepresentation including, for example, an immediate loss of equity in their home upon the imposition of these charges, adverse impact on debt-making decisions, and emotional distress.

109.    In addition, some class members suffered actual damages when they paid these improper fees to Star 214.

110.    Under 15 U.S.C. § 1692k, Mr. and Mrs. Brown seek actual and statutory damages for themselves and each putative class member and their reasonable attorneys' fees and costs. They also seek actual damages for the class members in the amount of the improper fees that they paid to Star 214.

### COUNT TWO:
**Declaratory Judgment Under 28 U.S.C. § 2201**
**(Class Claim Against Star 214)**

111.    Mr. and Mrs. Brown incorporate the preceding allegations.

112.    Under Federal Rule of Civil Procedure 23, Mr. and Mrs. Brown bring this action for themselves and on behalf of the following class:

> All consumers who received a mortgage loan for a Property (1) that was in default at the time Star 214 purchased the loan; (2) against whom Star 214 or its agents have collected or attempted to collect late fees, default-related fees or interest assessed by Star 214 or its servicer for time periods when the consumer did not receive monthly statements.

113. **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Upon information and belief, Mr. and Mrs. Brown allege that the class members are so numerous that joinder of all is impractical. Upon information and belief, Star 214 owns thousands of non-performing loans and subjects all of them to the same procedures for the assessment of interest, default charges and late fees and the same procedure for sending pre-acceleration notices. The class members' names and addresses are identifiable through Star 214's internal business records, and they may be notified of this litigation by published or mailed notice.

114. **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Mr. and Mrs. Brown and the putative class members are subject to ongoing harm absent a declaratory judgment; and (2) whether Mr. and Mrs. Brown and the putative class members are entitled to a declaratory judgment that they do not owe retroactively-assessed interest and fees; and (3) the appropriate scope of the declaratory judgment.

115. **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Mr. and Mrs. Brown's claims are typical of the claims of each putative class member. They are also entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

116. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4)**. Mr. and Mrs. Brown are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. Mr. and Mrs. Brown have retained counsel competent and experienced in class-action litigation, and they intend to

continue to prosecute the action vigorously. The Browns and their counsel will fairly and adequately protect the putative class members' interests. Neither the Browns nor their counsel have any interests that might cause them to not vigorously pursue this action.

117. **<u>Superiority</u>. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Star 214's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

118. Because the Browns and putative class members were the subject of collection effort that included interest and fees that the Plaintiffs and putative class members did not owe, Star 214 is attempting to collect more money than is due under the Plaintiffs' and putative class members' loans.

119. Mr. and Mrs. Brown and members of the class are subject to ongoing harm absent a declaration that interest and fees are waived and/or unenforceable, including the accumulation of additional debt, adverse credit reporting of the invalid loans, and abusive collection practices.

120.    The dispute and controversy is a justiciable matter that is not speculative, and a resolution by this Court will determine the rights and interests of the parties to the loan contracts as well as the validity, if any, of the disputed interest and fees,

121.    Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for resolving the ongoing attempted imposition of the interest and fees.

122.    Accordingly, Mr. and Mrs. Brown seek a declaratory judgment that all interest and fees assessed for periods in which Star 214 or its predecessors-in-interest failed to provide periodic statements are waived and/or unenforceable.

### COUNT THREE:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e(10)
### (Class Claim Against Statebridge)

123.    Mr. and Mrs. Brown incorporate the preceding allegations.

124.    Under Federal Rule of Civil Procedure 23, Mr. and Mrs. Brown bring this action for themselves and on behalf of the following class:

> All consumers: (1) with a loan that was in default at the time Statebridge became the servicer of the loan; (2) to whom Statebridge sent correspondence in the one year predating the filing of this lawsuit; (3) seeking to collect late fees, default-related fees or interest assessed by Statebridge or its agent for time periods when the consumer did not receive monthly statements.

125.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Mr. and Mrs. Brown allege that the class members are so numerous that joinder of all is impractical. Upon information and belief, Statebridge services thousands of non-performing loans and subjects all of them to the same procedures for the assessment of interest, default charges and late fees. Statebridge's records will also show whether or not monthly statements were sent to a class member. The class members' names and addresses are identifiable through Statebridge's internal business records, and they may be notified of this litigation by published or mailed notice.

126.    **Predominance of Common Questions of Law and Fact**. **Fed. R. Civ. P. 23(a)(2).**

Common questions of law and fact exist as to all putative class members, and there are no factual

or legal issues that differ between the putative class members. These questions predominate over

the questions affecting only individual class members. The principal issues include: (1) whether

Statebridge is a debt collector; (2) whether Statebridge violated § 1692e of the FDCPA by making

false representations about Mr. and Mrs. Brown's and putative class members' debts; and (3) the

appropriate amount of statutory damages.

127.    **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Mr. and Mrs. Brown's claims are typical of

the claims of each putative class member. They are also entitled to relief under the same causes of

action as the other putative class members. All claims are based on the same facts and legal

theories.

128.    **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4)**. Mr. and Mrs. Brown are

adequate representatives of the putative class because their interests coincide with, and are not

antagonistic to, the interests of the class members that they seek to represent. Mr. and Mrs. Brown

have retained counsel competent and experienced in class-action litigation, and they intend to

continue to prosecute the action vigorously. Mr. and Mrs. Brown and their counsel will fairly and

adequately protect the putative class members' interests. Neither the Browns nor their counsel

have any interests that might cause them to not vigorously pursue this action.

129.    **Superiority**. **Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the

class members predominate over questions affecting only individual members, and a class action

is superior to other available methods for fair and efficient adjudication of the controversy. The

damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be almost impossible for class members to effectively redress the wrongs

done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Statebridge's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

130.    Statebridge violated § 1692e(10) of the FDCPA by using false representations to collect or attempt to collect debts from Mr. and Mrs. Brown and the putative class members.

131.    For example, Statebridge falsely represented that Mr. and Mrs. Brown and the putative class members owed late fees and interest for the months that they were not sent monthly statements.

132.    Statebridge's statements were false. Mr. and Mrs. Brown and the putative class members did not owe these late fees or interest because they were not sent monthly statements.

133.    Mr. and Mrs. Brown and each putative class member suffered a concrete injury in fact because of Statebridge's misrepresentation including, for example, an immediate loss of equity in their home upon the imposition of these charges, adverse impact on debt-making decisions, and emotional distress.

134.    In addition, some class members suffered actual damages when they paid these improper fees to Statebridge.

135.    Under 15 U.S.C. § 1692k, Mr. and Mrs. Brown seek actual and statutory damages for themselves and each putative class member and their reasonable attorneys' fees and costs. They

also seek actual damages for the class members in the amount of the improper fees that they paid to Statebridge.

**COUNT FOUR:**
**BREACH OF CONTRACT**
**(Individual Claim Against Star 214)**

136.    Mr. and Mrs. Brown incorporate the preceding allegations.

137.    A Deed of Trust is construed under Virginia law as a contract.

138.    As a precondition to foreclosure under the terms of the Deed of Trust, Star 214 was required to provide Mr. and Mrs. Brown with a notice of default containing specific information about the default and how they could cure it.

139.    Star 214's default notices were defective because they listed an incorrect amount due on the loan. Specifically, they included interest and late fees that Mr. and Mrs. Brown did not owe because they were not being sent monthly statements.

140.    A notice of default is a condition precedent to acceleration and foreclosure. *Bayview Loan Servicing, LLC v. Simmons*, 275 Va. 114, 121 (2008) ("Because Bayview did not comply with a condition precedent under the Deed of Trust . . . Bayview has not acquired the right to accelerate payment under the terms of the Deed of Trust.").

141.    Star 214 breached the Deed of Trust and did not satisfy the preconditions to foreclosure due to its failure to identify the nature or any default.

142.    Star 214's breach of Deed of Trust has caused Mr. and Mrs. Brown to suffer actual damages, including the assessment of fees and costs that they do not owe.

143.    Additionally, Star 214 has waived the right to enforce the Deed of Trust through nonjudicial foreclosure when it has materially breached its contract, sometimes for more than a decade, to the Browns' detriment.

144.    Mr. and Mrs. Brown seek an award of actual damages, including the restoration of lost equity, from Star 214 for themselves.

145.    Additionally, or in the alternative, Mr. and Mrs. Brown request that the Court enjoin Star 214 from enforcing the Deed of Trust, including the foreclosure sale for the Browns' loans under Va. Code § 8.01-622.

**COUNT FIVE:**
**Violation of FDCPA, 15 U.S.C. § 1692e**
**(Individual Claim Against Statebridge)**

146.    Mr. and Mrs. Brown incorporate the preceding allegations.

147.    Statebridge violated 15 U.S.C. § 1692e(2)(A) by making false statements to Mr. and Mrs. Brown about the legal status of their debt.

148.    For example, on August 9, 2024, Statebridge sent Mr. and Mrs. Brown a letter stating that a foreclosure sale had been set for August 15, 2024 and that they needed to contact Statebridge immediately to save their home from foreclosure.

149.    This statement was false, as no foreclosure sale had been set for August 15, 2024.

150.    Because of Statebridge's violations of 15 U.S.C. § 1692e, Mr. and Mrs. Brown suffered actual damages, including significant emotional distress.

151.    Based on Statebridge's violation of § 1692e, Mr. and Mrs. Brown are entitled to actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

**COUNT SIX:**
**Violation of FDCPA, 15 U.S.C. § 1692f(6)**
**(Individual Claim Against Star 214 and Statebridge)**

152.    Mr. and Mrs. Brown incorporate the preceding allegations.

153.    Star 214 and Statebridge violated 15 U.S.C. § 1692f(6) attempting to foreclose on Mr. and Mrs. Brown's property. Star 214 and Statebridge did not have any present right to

possession of the property at the time that they conducted foreclosure activities, including scheduling a foreclosure sale and advertising the sale, because Star 214 and Statebridge did not send a pre-acceleration notice that complied with the Deed of Trust.

154.    Instead, the pre-acceleration notice that Star 214's and Statebridge's agents sent to Mr. and Mrs. Brown listed an inaccurate outstanding balance and an inflated amount to cure the default.

155.    Because of Star 214's and Statebridge's violations of 15 U.S.C. § 1692f, Mr. and Mrs. Brown suffered actual damages, including loss of equity and significant emotional distress.

156.    Based on Star 214's and Statebridge's violation of § 1692f, Mr. and Mrs. Brown are entitled to actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

## COUNT SEVEN:
### Violation of RESPA, 12 U.S.C. § 2605(e)(2)
### (Individual Claim Against Statebridge)

157.    Mr. and Mrs. Brown incorporate the preceding allegations.

158.    As alleged above, Mr. and Mrs. Brown submitted a qualified written request to Statebridge, and Statebridge received the request.

159.    Statebridge violated 12 U.S.C. § 2605(e)(2) by failing to make appropriate corrections to Mr. and Mrs. Brown's account, including removal of the improper interest from their account.

160.    Statebridge also violated 12 U.S.C. § 2605(e)(2) by failing to provide Mr. and Mrs. Brown with most of the information they requested or to explain why the requested information was unavailable.

161.    Because of Statebridge's conduct, Mr. and Mrs. Brown suffered concrete and

particularized harm, including: assessment of fees and charges that they did not owe, and emotional distress, including aggravation and stress.

162.    Upon information and belief, discovery will reveal that Statebridge's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

163.    For example, upon information and belief, Statebridge has a standard policy of not providing certain documents in response to a consumer's qualified written request, including servicing notes and invoices.

164.    In addition, the Consumer Financial Protection Bureau's consumer complaint portal shows that 766 mortgage-related complaints have been filed against Statebridge as of October 28, 2024, including several complaints about issues with communicating with Statebridge to fix an existing issue.

165.    Mr. and Mrs. Brown are entitled to recover actual damages, statutory damages, costs, and attorney's fees from Statebridge for each of its violations of 12 U.S.C.§ 2605(e)(2) under 12 U.S.C. § 2605(f).

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. and Mrs. Brown, on behalf of themselves and the putative class members, move for class certification and for statutory and actual damages, as well as their attorneys' fees and costs as pleaded above against Defendants for the class claims, as well as actual and statutory damages, and attorneys' fees and costs for their individual claims; for pre-judgment and post-judgment interest at the legal rate, and any other relief the Court finds appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL.**

Respectfully submitted,
**DANIELLE BROWN AND ROY BROWN**

By: _____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiffs*