**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| DANIELLE BROWN AND ROY BROWN, *on behalf of themselves and all similarly situated consumers*, | |
| Plaintiffs, | Civil Action No. 1:24-cv-1964 |
| v. | |
| STAR 214, LLC and STATEBRIDGE COMPANY, LLC, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL**

Plaintiffs Danielle and Roy Brown seek a Court order compelling Defendants Star 214, LLC and Statebridge Company, LLC to provide full and complete discovery responses as outlined below. The Browns' counsel certify that they have met and conferred with Defendants' counsel to resolve these discovery issues without Court intervention, including the proposal of stipulations and agreements that would limit the disputes between the parties. Despite these efforts and proposals, Defendants have refused to produce critical information and documents about this case, which necessitates the filing of this Motion.

**INTRODUCTION**

Defendants acquired the Browns' second mortgage loan and retroactively assessed close to $100,000 in interest charges. After artificially inflating the loan balance, Defendants initiated a foreclosure against the Browns' home, seeking to collect tens of thousands of dollars to which they were not entitled. After the Browns disputed the inaccurate interest charges, Defendants removed some, but not all, of the improper interest. Defendants still contend that the Browns owe interest that was waived by the Browns' prior loan servicer. Defendants' conduct, detailed below, violated

several laws, including the Fair Debt Collection Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA"). The Browns assert both class and individual claims.

First, the Browns allege class claims under § 1692e of the FDCPA, which Congress enacted "to eliminate abusive debt collection practices by debt collectors." That law specifically prohibits false, deceptive, or misleading communications regarding the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The Browns allege that Defendants violated this provision by sending monthly statements or other correspondence to them and the putative class members that contained interest charges that were not owed. The Browns also allege an individual § 1692e claim against Statebridge for sending them a letter with the wrong foreclosure sale date, which Statebridge represented was months earlier than the actual sale date.

Second, the Browns allege that Defendants violated § 1692f of the FDCPA, which prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if" there is "no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Defendants violated this section because the pre-acceleration notice—a condition precedent to foreclosure under their Deed of Trust—that they sent to the Browns vastly overstated the arrears and amount needed to cure any default by approximately $86,000. (*See, e.g.*, Am. Compl. ¶¶ 74–76, 154.)

Third, the Browns allege that Statebridge violated § 2605(e)(2) of RESPA, which provides that a "servicer shall—(A) make appropriate <u>corrections</u> in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower)." 12 U.S.C. § 2605(e)(2)(A) (emphasis added). Statebridge violated this section because, after receipt of the Browns' Qualified Written

Request contesting the inaccurate assessment of interest that their prior servicer had waived, Statebridge failed to correct their account and continued to send them monthly statements and other correspondence listing the inaccurate interest charges. Statebridge also refused to provide several documents that the Browns requested in their QWR, including the servicing notes and any invoices supporting the fees assessed to the loan.

Finally, the Browns allege that Star 214 breached their deed of trust when it sought to foreclose without meeting the condition precedent to foreclosure under their deed of trust (a proper acceleration notice) and they request a declaratory judgment on behalf of themselves and the putative class members that Star 214 is not entitled to collect the retroactively assessed interest.

**FACTUAL BACKGROUND**[1]

The Browns purchased their home in Loudoun County, Virginia in April 2001. (Compl. ¶ 49.) In March 2005, the Browns took out a second mortgage to help pay down some debt and complete some renovations to their home. (*Id.* ¶ 50.) In November 2010, the Browns modified their second mortgage; when the loan was modified, the outstanding principal balance was $99,236.00. (*Id.* ¶ 51.)

A few years later, the Browns experienced financial difficulties after a job loss. (*Id.* ¶ 52.) At that time, Nationstar serviced both of their mortgages. (*Id.* ¶ 53.) The Browns immediately reached out to Nationstar to make sure that they could stay in their home, where they were raising their three children, and eventually modified their first mortgage. (*Id.* ¶¶ 49, 54–55.) At that time, the Browns believed that their modification also resolved their second mortgage—throughout the modification process, the Browns repeatedly asked about their second mortgage, and Nationstar

---

[1] Although lengthy, the Browns provide this basic overview to the Court to put their discovery requests in their proper context. All information that the Browns seek in this motion are central to their FDCPA and RESPA claims and the evidence needed to establish their class claim satisfies all the Rule 23 requirements.

3

told them that their second mortgage was "taken care of." (*Id.* ¶ 56.) The Browns made the last payment on their second mortgage in January 2013, and stopped receiving monthly mortgage statements around that time, reinforcing their belief that the second mortgage was resolved. (*Id.* ¶ 57.)

The Browns didn't hear anything about their second mortgage *for years*. (*Id.* ¶ 58.) Unbeknownst to the Browns, Nationstar had transferred their second mortgage to NSM Recovery, Inc., a debt collection subsidiary of Nationstar Mortgage, LLC. (*Id.* ¶ 59.) Then, several years after their loan modification, the Browns received a call from a company called Veripro Solutions (formerly known as NSM Recovery, Inc.), who told them that there was an outstanding balance on their second mortgage. (*Id.* ¶ 60.) The Browns told Veripro that their second mortgage had been included in their loan modification, and they also called Nationstar, who assured them that the loan had been charged off and that they did not need to worry about any outstanding balance on the second mortgage. (*Id.* ¶¶ 61-62.)

Star 214 purchased the Browns' second mortgage in November 2021. (*Id.* ¶ 63.) The Browns were unaware of the transfer, and no one notified them of the sale. (*Id.* ¶¶ 63, 65.) Star 214 transferred the servicing of the Browns' loan to Statebridge in June 2022. (*Id.* ¶ 66.) At the time of the transfer, Veripro informed Statebridge that the outstanding balance on the Browns' loan was $95,476.50:



Ex. 1, Bates No. DEFS-0000343-45 at 345. And the documents in this case show that Veripro, NSM Recovery, and Nationstar had waived any interest by electing not to assess it. Joshua Ross, a Statebridge employee, confirmed that ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████

After Statebridge acquired the servicing rights and retroactively assessed interest based on the last payment date provided by Veripro, which was December 2012, Statebridge then started sending the Browns monthly mortgage statements that included these inaccurate amounts. (Compl. ¶ 67.) These statements were incorrect because they included the retroactively assessed interest, which the Browns did not owe. (*Id.* ¶¶ 68, 71.) Statebridge also sent foreclosure notices to the Browns, including a pre-acceleration notice in November 2022, which stated that the loan was $95,476.50, with interest of $86,571.71 and fees of $189 due on the loan. (*Id.* ¶ 75.) The notice also stated that the Browns needed to pay $182,237.21 by January 25, 2023 to avoid their home being referred to foreclosure. (*Id.* ¶ 74.)

In response to a foreclosure notice, the Browns requested validation of the alleged debt. (*Id.* ¶ 79.) In response, the foreclosure law firm sent the Browns documentation about the second mortgage, including the accounting above, which reflected that the loan balance was only $95,476.50 on May 16, 2022, before Statebridge retroactively assessing the interest. (*Id.* ¶ 80.)

---

[2] Mr. Ross's deposition occurred on April 10, 2025. The Browns' counsel has requested an expedited transcript and will provide the relevant portions of the transcript with their reply brief.

The Browns sent Statebridge a Qualified Written Request in August 2024 disputing this inaccurate assessment of interest and requesting documents to support their dispute. (*Id.* ¶ 83.) Statebridge responded to this Qualified Written Request on October 1, 2024. (*Id.* ¶ 91.) Statebridge's response indicated that ███████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████[3]



Ex. 2 at DEFS-0000303. Indeed, although Statebridge removed about half of the retroactive interest as part of the Browns' dispute, it still assessed close to $50,000 in retroactive interest for periods in which the Browns' prior loan servicers had not sent monthly statements.

Defendants' conduct has caused significant damage to the Browns, including the loss of tens of thousands of dollars in equity. They have also suffered emotional distress at the thought of losing the home where they have lived for almost 25 years and where they raised their three children. And they were humiliated when the foreclosure sale was advertised, which caused several individuals to contact them about selling their home before a foreclosure sale. A neighbor saw the advertisement and asked the Browns about it, and a potential third-party purchaser reached out to

---

[3] Statebridge's QWR response was defective in other respects, including because it did not provide many of the documents that the Browns requested, including the servicing notes and the invoices supporting the fees assessed to the loan. (Compl. ¶ 96.)

the Browns' daughter to see if her parents would sell the home, all of which caused tremendous embarrassment.

Based on Defendants' conduct, the Browns alleged the seven claims against Defendants described above.

**MEET AND CONFER EFFORTS**

The Browns filed this case on November 2, 2024. (ECF No. 1.) Defendants answered the Complaint on January 10, 2025 (ECF Nos. 17, 18), and the Court entered a Scheduling Order on January 13, 2025 (ECF No. 19). The Browns served their first set of discovery requests, including interrogatories and document requests on each Defendant on January 15, 2025. Defendants objected to the Browns' requested on January 30, 2025. The parties had conversations about the data necessary to assess this issue and participate in an early settlement conference. There were also multiple written communications about the necessary data both before and after the previously scheduled settlement conference. The parties met and conferred by phone about Defendants' objections on March 28, 2025, and discussed several of Defendants' objections and discovery positions and what documents were to be expected in Defendants' forthcoming responses. This call was memorialized by email correspondence later that day. Ex. 3.

Defendants responded to the Browns' requests on April 3, 2024. Ex. 4 (Starebridge's interrogatory responses); Ex. 5 (Statebridge's RFP responses); Ex. 6 (Star 214's interrogatory responses; Ex. 7 (Star 214's RFP responses). The parties conferred about the responses on April 9, 2025 during two telephone calls which were again memorialized in a letter sent later that day. Ex. 8.

Although the parties' efforts resolved some of the outstanding discovery issues, several remain. Defendants have also stated that they intend to resolve and comply with some requests, but have made clear their intentions not to do so with others. Defendants' refusal to provide certain

7

critical documents necessitated the filing of this motion so that all discovery will be completed under the current Scheduling Order.

## ARGUMENT

### A.    The Court should compel Defendants to produce class discovery.

"[C]ourts need not 'accept plaintiffs' pleadings when assessing whether a class should be certified." *Gibbs v. Stinson*, No. 3:18-cv-676, 2021 WL 4812451, at \*5 (E.D. Va. Oct. 14, 2021) (Lauck, J.) (quoting *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004)). Instead, a district court "must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Id.* (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quoting *Gariety*, 368 F.3d at 365). Because a court "must take a 'close look' at the facts . . . some discovery is necessary prior to a determination of class certification" so that a plaintiff may establish each of Rule 23's elements. *Hubbard v. Potter*, No. 03-cv-1062, 2007 WL 604949, at \*1 (D.D.C. Feb. 22, 2007).

Consistent with this governing law, the Browns served discovery seeking to establish the class certification elements, including numerosity, ascertainability, and typicality.[4] For example, the Browns asked Defendants to produce a class list and other information necessary to identify and ascertain class members in this case, including the amount of interest that was assessed to their loans during months that the borrower did not receive a monthly statement. Ex. 4 at Interrog. 6, 7; Ex. 5 at Req. 44, 47-49; Ex. 6 at Interrog. 7, 8; Ex. 7 at Req. 38-40.

---

[4] In addition to Rule 23(a)'s explicit elements, courts including the Fourth Circuit have implied a threshold of identifiability or ascertainability. As this Court recently explained, "in order to certify a class under Rule 23, a court must be able to readily identify the class members in reference to objective criteria. Although the plaintiff need not be able to identify every class member at the time of certification, the plaintiff must demonstrate that class members will be identifiable without extensive and individualized fact-finding or 'mini-trials.'" *Souter v. Equifax Information Servs., LLC*, 307 F.R.D. 183, 195 (E.D. Va. Apr. 15, 2015) (Payne, J.) (internal citations and quotations omitted).

In response to these requests, Defendants have provided a list of approximately 800 loans that they admit were assessed improper interest, but for whom they have refunded *some* of the improper interest charges. Although Defendants have failed to provide the criteria they used to identify and pull these loans, it is clear from the face of the document that Defendants' proposed class list is problematic for several reasons.

First, Defendants have improperly limited the class list to loans that were managed by the same management company as the Browns' loan—a company named Shelving Rock. But the Browns' class claim against Statebridge is not limited to Shelving Rock loans—instead, it includes all loans that Statebridge services, regardless of the investor or management company.

Second, the parties disagree about the scope of the class—Defendants contend that the interest charges were only improper if assessed after the Regulation Z Amendments in October 2017. In other words, Defendants believe that it was proper to assess interest on loans before October 2017, even though: (i) they know that consumers were not being sent monthly statements; and (ii) they refuse to produce any information about amount of interest charges that accrued before October 2017. The Browns disagree and believe that interest should not have been assessed for any month that a consumer did not receive a monthly statement—regardless of the 2017 Regulation Z Amendment.

Third, Defendants state that there are no members in the Statebridge class because the improper interest charges were *assessed* by prior loan servicers, not Statebridge. According to Statebridge, this means that there are no class members under a strict interpretation of the Browns' proposed class definition.[5] But this simply not correct. Statebridge's employee, Joshua Ross,

---

[5] The Browns' proposed class definition against Statebridge is: "All consumers: (1) with a loan that was in default at the time Statebridge became the servicer of the loan; (2) to whom Statebridge sent correspondence in the one year predating the filing of this lawsuit; (3) seeking to collect late

testified that ███████████████████████████████████████████████████████

███████████████████████████████████ Given this testimony, it is

unclear how Defendants can say that they did not assess interest to the loans. And, this position is

also disingenuous, because as the Browns' counsel has explained on meet and confers, Defendants

did assess the interest when they included the interest amount in monthly statements and other

correspondences and demanded the Browns and other class members pay those amounts.

And finally, Defendants have refused to provide any personal identifying information or

other loan level detail about the putative class members because a class has not yet been certified.

Production of class member data is not an uncommon outcome in other consumer class action

cases. *See, e.g.*, *Soutter v. Equifax Info. Services, LLC*, No. 3:10-cv-107-REP, ECF No. 114 (E.D.

Va. May 20, 2011); *James v. Experian Info. Solutions, Inc.*, No. 3:12-cv-902-REP, ECF No. 57

(E.D. Va. Oct. 4, 2013); *Henderson v. Corelogic, Inc.*, No. 3:12-cv-97-REP, ECF No. 49 (E.D.

Va. Aug. 13, 2013); *Rodriguez v. Equifax Info. Servs.*, No 1:14-cv-1142 (E.D. Va.Mar. 12, 2015)

(Hr'g Trans. at 54:3–8) (Jones, J.) ("The Court: If Equifax is not willing to stipulate to

ascertainability, then Equifax is going to have to produce for a two-month period to be picked by

Mr. Bennett the reports and all of the relevant 1681k information for that same two months so he

can go put the numbers together himself.") (excerpt attached as Ex. 9); *see also Manual v. Wells

Fargo*, No. 3:14-cv-238 (E.D. Va. Mar. 12, 2015 Order) (Payne, J.) (requiring either the production

of full-unredacted class member files or a defendant's stipulation as to typicality and

ascertainability) (attached as Ex. 10); *Ceccone v. Equifax Info. Servs., LLC*, No. 13-cv-1314, 2015

WL 221720, at *1 (D.D.C. Jan. 15, 2015); *Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019

---

fees, default-related fees or interest **assessed by Statebridge or its agent** for time periods when the
consumer did not receive monthly statements." (Compl. ¶ 124 (emphasis added).)

WL 7143664, at *9 (E.D. Va. Dec. 23, 2019) (ordering production of the names and identities of all potential class members and holding that "[t]he fact that a discovery request seeks information related to a class that has not been certified is not by itself sufficient to deny production").

In fact, in a case before Judge Nachmanoff, the Court ordered a significantly larger number of class member files to be produced so that the plaintiff could ascertain class membership:

> THE COURT: Okay. I think the Court is ready to rule. Having heard the arguments of counsel and having reviewed the pleadings in this case, I find that the motion should be granted at least in part with regard to access to the MERS reports, and the Court will order that the parties work together to find a number, and 8,000 is an appropriate number unless there are good reasons to come up with a different number otherwise rather than a period of time so that there's a manageable universe of documents that need to be turned over. Those documents need to be turned over in unredacted form, subject to the protective order, and the burden falls on the plaintiff to segregate out active from inactive files, so I'm not placing any burden on the defense to require MeridianLink to write code or otherwise make it a longer process than it needs to be, and that is based on an understanding that having come up with a number and a manner in which those 8,000 are picked, that the defense will then not make an argument regarding the representative nature of the sample, not that there's a concession as to class certification of the elements, but simply that the number is not -- or the manner in which those have been selected is not typical or representative for purposes of creating a sample.

*Campos-Carranza v. Credit Plus, Inc.*, No. 1:16-cv-120 (E.D. Va. July 29, 2016) (Hr'g Trans. at 33:11–34:7) (attached as Exhibit 11). And even more importantly, Judge Vaala ordered the production of class member data in another zombie second mortgage case, including the borrower's loan level detail and correspondences sent to putative class members. *Simon v. Specialized Loan Servicing, LLC*, 1:23-cv-1159 (E.D. Va.)(ECF No. 66). This data included the putative class members' unredacted names and addresses.

This information is clearly relevant and discoverable at this posture, and any potential privacy rights of the putative class members can be adequately protected by the protective order, as has been done in the other class cases cited above. Defendants have shown that they have the ability to locate the affected loans, as they have already been able to locate a subset of the class.

As a result, Defendants should be compelled to produce a list of all consumers that meet the class definitions listed in the Browns' Complaint.

**B.      The Court should order Defendants to produce the Browns' full loan file.**

Statebridge RFP Nos. 8, 15, and 16 and Star 214 RFP Nos. 8, 13, 14, and 31 seek the production of all documents related to the Browns' loan, including all documents related to their mortgage, the documents that Defendants received during the loan transfer, the servicing of their loan, and documents from any of Defendants' databases regarding the loan. Ex. 5 at Reqs. 8, 15, 16; Ex. 7 at Reqs. 8, 13, 14, 31. Similarly, Interrogatory No. 17 asked Statebridge to identify every code ever applied to the Browns' mortgage, including the dates that the code was applied to or removed from the account and the plain language meaning of the code. Ex. 4 at Interrog. 17. Defendants have failed to provide complete responses to these requests.

First, Defendants have failed to produce all of the documents that they received when Star 214 purchased the Browns' loan or that Statebridge received from Veripro when it started servicing the loan. As detailed above, this is a critical issue, as it appears that Veripro provided data to Defendants showing that the total balance of the Browns' loan at the time of transfer was $95,476.50 and that no interest had been charged to the loan since 2013. Mr. Ross also testified that ██████████████████████████████████████████████████ ███████████████████████ This fact is central to the parties' dispute, as it will establish that the amount that Defendants were attempting to collect from the Browns was inaccurate and therefore violated the FDCPA.

Defendants have also failed to produce the data from their servicing platform regarding the Browns' loan. Although they have provided a generic list of all of the available fields, which shows that there are 2,831 data points available about the Browns' loan in the servicing database,

Defendants have not provided any of the data specific to the Browns' loan. Similarly, Defendants have not responded to Statebridge Interrogatory No. 17, which seeks all codes ever applied to the loan, including when the codes were applied/removed from the account. This loan level detail sought by these requests is important because the Browns will use this data to see if there is a way to easily identify class members and what data points they would need to do so. This is exactly what the Browns' counsel has done in other mortgage litigation, including within the past year in *Simon v. Specialized Loan Servicing, LLC* case. 1:23-cv-1159 (E.D. Va.). In that case, the plaintiffs used their own loan data to determine what information they needed about the putative class members, and where it was stored within the database. Relatedly, Defendants have also failed to produce any database screenshots regarding the Browns' loan, which will also show the data about the Browns' loan and how this information could be used to identify class members.

Along with the servicing data and screenshots, Defendants have also failed to provide any internal communications regarding the Browns' loan. For example, Mr. Ross testified that ████████████████████████████████████████████████████████ But no communications have been produced about that decision. Defendants have also not produced any notes, checklists, or other documents regarding the investigation that Statebridge conducted regarding the Browns' QWR, which is central to their RESPA claim.

Additionally, there was over six months after Star 214, LLC acquired the loan *before* Statebridge became the servicer. So, Star 214, LLC should have information and communications with the prior servicer regarding the Browns' loan that would be in addition to what Statebridge has provided. But it does not appear that Star 214, LLC has produced a single document outside of what Statebridge has produced.

These documents are critical to this case. They will reveal information about the Browns' loans, including the information that Defendants received about the loan at boarding, how Defendants investigated and responded to the Browns' QWR, and any communications about removing the interest from their loan. The Court should require Defendants to provide these documents, as well as any other documents in their possession about the Browns, their loan number, or their property.

### C.  The Court should compel Defendants to explain the circumstances under which they bought and serviced the Browns' loan.

The Browns asked Defendants to provide information about the purchase and servicing of the Browns' loan. Ex. 4 at Interrog. 9; Ex. 6 at Interrog. 10. Although Defendants provided a partial response to these requests, they omitted several important details from their responses. For example, Statebridge has not identified all of the documents that it received when the loan was transferred—which, as explained above, is a critical issue. Statebridge has not identified how it is compensated for servicing the loan, including whether it is paid a percentage of what it is able to recover on a defaulted mortgage—a common practice is this industry and a powerful motivation for servicing companies to inflate loan balances as much as possible. Star 214 did not identify the documents that it received as part of the purchase of the loan or any due diligence that was done on the portfolio—again, a critical issue, since Defendants have not yet conceded that no interest was assessed by the prior servicer (even though they have conceded no monthly statements were sent). Star 214 has also not provided the purchase price of the loan portfolio and what it received related to the balance of the loans in the portfolio—including the Browns—at the time of purchase.

Defendants object to these requests on several grounds, including privilege, confidentiality, privacy rights, relevance and proportionality. It is unclear how this information is privileged, what privacy rights would be implicated by the requests, or how the protective order in this case would

not adequately protect the requested information. The information is clearly relevant, and Defendants' proportionality objection is improper. To successfully raise a proportionality objection, the party resisting discovery must specifically articulate how the request is not proportionate and why the discovery should not be permitted. *See, e.g.*, *Santiago v. S. Health Partners*, No. 1:15-cv-589, 2016 WL 4435229, at *2 (M.D.N.C. Aug. 19, 2016); *Ashmore v. Williams*, No. 8:15-cv-03633-JMC, 2017 WL 2437082, at *4 (D.S.C. June 6, 2017); *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016); *see also* Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment ("Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations."); *id.* ("Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional."). Because Defendants have not tried to carry this burden and instead stated a boilerplate and conclusory proportionality objection, the Court should overrule it.

As a result, the Court should overrule Defendants' objections and compel them to provide full, narrative responses to Interrogatory Nos. 9 and 10.

### D. Defendants should be compelled to produce any agreements or communications with third parties about the Browns' loan.

The Browns asked Defendants to produce any agreements or communications with any prior investors, servicers, or each other regarding the Browns' loan. Ex. 5 at Reqs. 9-13, 40, 42; Ex. 7 at Reqs. 9-11, 33, 35. These agreements and communications are relevant for several reasons. First, the agreements with the prior investors and servicers likely contain warranties and representations that were made at the time of transfer, which could be relevant to whether the loans in the portfolios were charged off and the interest charges that Defendants are attempting to collect.

Some of these agreements that the Browns' counsel have seen in previous cases included the loan portfolios that the agreement covered, which could be used to identify class members. And the requested communications will show what diligence Defendants completed before they bought the loan, what they understood the balance to be on these loans, and what actions Defendants took on the Browns' loan, including how Defendants determined that some, but not all of the interest charges should be removed from the Browns' loan. It could also contain communications about how Defendants investigated and responded to the Browns' QWR. Mr. Ross also testified that ███████████████████████████████████████████████████████████████████████, which have not been produced in this case.[6]

In response to these requests, Statebridge raised the same boilerplate objections that it raised to most of the Browns' requests, including privilege, confidentiality, privacy, relevance, and proportionality. These objections fail for the same reason as explained above—the protective order will address any confidentiality or privacy concerns, and the other objections are not properly supported as the Federal Rules require. Defendants also assert that producing the communications would pose an undue burden. But just like their other boilerplate objections, Defendants' objection fails because they have not explained the time or expense associated with producing the requested documents. Without detailed information to substantiate the claim of burden, the objection fails. *See, e.g.*, *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08-cv-288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008). The mere statement by a party that a discovery request is burdensome is not adequate to voice a successful objection to discovery. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th

---

[6] Plaintiffs do not need all of these daily reports to be produced. They would like a sample of these reports, however, to see what information they contain and so they can determine if they would need reports from specific time periods.

16

Cir. 1990); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). The objecting party must objectively support its claim. It must demonstrate specifically how, given the liberal construction afforded the federal discovery rules, the discovery request is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D. Pa. 1980); *see also, Burns v. Image Films Ent.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

The Court should overrule all Defendants' objections and compel complete responses to these requests.

### E. Defendants should be compelled to respond to the Browns' discovery about their servicing databases.

Because Defendants have not provided a class list, the Browns asked them to identify the databases that they used for various aspects of servicing and the database manuals and schemas for those databases. Ex. 4 at Interrog. 10; Ex. 5 at Req. 45, 46; Ex. 6 at Interrog. 11; Ex. 7 at Req. 36, 37. Defendants responded to the Browns' interrogatories by identifying two databases that Statebridge uses to services loans: Fusion Servicing Director by Finastra; and Security Connections, Inc. by First American Family. Defendants, nonetheless, failed to provide any documentation about these systems other than a list of the 2,831 fields available within the servicing database. The produced document is of virtually no use, as it does not explain exactly what data is contained in these fields, whether the field is actually used, how the fields interact, or how the systems could be searched. The Browns have previously requested that Defendants provide the fields so that they can determine how and if certain fields are used. Defendants also refused to provide any information about systems used by Star 214.

Defendants objected to the production of these documents as privileged, seeking confidential information, impermissibly violating the privacy or proprietary rights of others, overly

broad, not reasonably calculated to lead to the discovery of admissible evidence, and not proportionate to the case. None of these objections justify withholding these documents from discovery.

First, Defendants' proportionality objection fails because it is not properly supported, as discussed above. As for Defendants' overbreadth and relevancy objection, the Browns are willing to limit the requests to the Fusion Servicing Director by Finastra and Security Connections, Inc. by First American Family databases identified in Defendants' interrogatory responses, which Defendants admit contain servicing communications and loan histories. This is clearly relevant, as these manuals and schemas may reveal fields that could be queried to identify the class members. In fact, this Court recently ordered production of similar information in other zombie second mortgage litigation. *Simon v. Specialized Loan Servicing, LLC*, 1:23-cv-1159 (E.D. Va.)(ECF No. 66); *Mills v. Specialized Loan Servicing, LLC*, 1:24-cv-68 (E.D. Va.)(ECF No. 71).

As a result, the Court should overrule Defendants' objections and compel it to provide the technical manuals and database schemas for the Fusion Servicing Director by Finastra and Security Connections, Inc. by First American Family databases.

### F.    Defendants should be compelled to produce prior complaints.

The Browns requested that Defendants identify every lawsuit in which they have been sued for any of the statutory violations alleged in the three years predating the filing of this lawsuit. Ex. 4 at Interrog. 18; Ex. 6 at Interrog. 16. The Browns also requested notices or complaints received by Defendants from the Consumer Financial Protection Bureau, Federal Trade Commission, Better Business Bureau, state attorneys general offices, and consumers regarding Defendants' compliance with the FDCPA and RESPA, or the assessment of interest on mortgage loans for periods when monthly statements were not provided.  Ex. 5 at Reqs. 24-27; Ex. 7 at Reqs. 20-23. In response, Defendants stated that they had not been sued for exactly the same fact pattern

18

presented in this case and that, as much as the Browns were seeking a broader set of complaints under the statutory provisions, those complaints were publicly available and that the Browns should go locate and retrieve them. As for the remaining complaints, Defendants stated during the April 9 meet and confer that they are still looking for the complaints. They also represented that they were not sure when the complaints would be produced or what was being done to locate them.

This is particularly problematic because Mr. Ross testified during his deposition that ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

Defendants' self-imposed limitation on their responses to only those lawsuits or complaints that are "similar to" to the precise fact pattern of this lawsuit is improper. Putting that aside, it stretches credulity that Statebridge has not been sued in the last three years for failing to properly respond to QWRs related to demanding payments of amounts that a consumer does not believe he or she owes, just like what happened to the Browns. Defendants' prior lawsuits and complaints related to its compliance with RESPA and the FDCPA, even generally, are also directly relevant. As courts in this District have recognized, one of the factors considered in awarding statutory damages under the FDCPA is "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Lundie*, 2016 WL 717113, at *5; *see also* 15 U.S.C. § 1692k(b). Prior complaints against Defendants would demonstrate each of these factors, entitling the Browns and the putative class members to a higher statutory damages award.

19

Similarly, complaints about Statebridge's compliance with RESPA are directly relevant to whether it has a pattern or practice of noncompliance with § 2605, which in turn affects the Browns' right to statutory damages. 12 U.S.C. § 2605(f).[7] Contrary to Statebridge's objections, moreover, the Browns need not tie these prior alleged violations of § 2605 to the specific circumstances of this case. *See Akkus v. Rocket Mortg.*, __ F. Supp. 3d __, 2024 WL 473733, at *4 (D. Md. Feb. 7, 2024) (finding that "pattern or practice of noncompliance with the requirements of this section," as used in § 2605(f), referred to any violations of the section and was not limited to only violations related to specific conduct or even the subsection at issue). Simply put, any alleged violation of § 2605 is relevant to the Browns' right to statutory damages under the RESPA.

Nor can Defendants refuse to provide the lawsuits simply because they are publicly available. *Feinberg v. T. Rowe Price Group, Inc.*, 2019 WL 6497959, at *6 (D. Md. Dec. 3, 2019) (holding that "citation to publicly available securities information is too general to fulfill [a party's] discovery obligations").

Recognizing these principles, courts have ordered the disclosure of prior lawsuits and complaints related to the FDCPA and RESPA in similar cases, including this Court in other zombie second mortgage litigation. *Simon v. Specialized Loan Servicing, LLC*, 1:23-cv-1159 (E.D. Va.)(ECF No. 66); *see also Pierce v. NovaStar Mortg.*, No. 05-cv-5835, 2006 WL 3342214, at *2 (W.D. Wash. Nov. 14, 2006) (compelling response to request seeking "'all . . . complaints or claims filed against [the defendant] that allege a violation of . . . [RESPA] from January 1, 1999 until the present'"); *Peters v. GC Servs.*, No. 04-cv-648, 2005 WL 8174887, at *2 (N.D. Okla. Apr. 18, 2005) (compelling response to interrogatories asking for prior lawsuits and consumer complaints

---

[7] To reduce the burden in complying with this request, the Browns offered a stipulation that if they established all of the other elements of their RESPA claim, Statebridge would agree to pay the $2,000 in statutory damages in lieu of responding to the interrogatory about prior RESPA lawsuits.

alleging violations of the FDCPA in the past five years, finding information "relevant to the issue of frequency and persistence of noncompliance with FDCPA").  The Browns therefore respectfully request that Defendants be compelled to respond to the above requests regarding prior lawsuits and consumer complaints.

### G.      Defendants have refused to search for or produce any ESI in this case.

The Browns have served several document requests implicating electronically stored information, including: communications regarding the Browns' loan (Ex. 5 at Reqs. 12, 13, 40; Ex. 7 at Reqs. 11, 33, 35); and audits, studies, or research regarding any alleged problems with Defendants' FDCPA or RESPA policies or procedures (Ex. 5 at Req. 34; Ex. 7 at Req. 30).

This information is relevant. The communications are discussed above. As for the audits, they are relevant to whether Defendants' conduct constituted a pattern and practice of violating RESPA and the appropriate amount of statutory damages under the FDCPA. *Lundie v. Smith & Cohen, LLC*, No. 2:15-cv-291, 2016 WL 717113, at *5 (E.D. Va. Jan. 26, 2016) (Miller, J.), *report and recommendation adopted,* 2016 WL 715736 (E.D. Va. Feb. 18, 2016) (one factor in determining statutory damages under the FDCPA is "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." ) (citing 15 U.S.C. § 1692k(b)(1)).

During the Parties' March 28 meet and confer regarding Defendants' objection, the Browns asked for the parameters of Defendants' ESI search to ensure that all responsive documentation would be captured in the search. During this call, Defendants' counsel represented that while they were generally searching Defendants' databases for information, they would not be conducting any email searches at all, as they believed that the cost of conducting those searches was not warranted based on the claims here.

First, it is commonplace in mortgage servicing industry to email about a specific consumer loan. Indeed, in other mortgage cases before this court, it is routine to, at minimum, conduct a search for plaintiff-specific communications using the borrower's name, address, and loan number as search terms. But not even that has been done here.

Of course, Defendants have provided no evidence of the burden or cost associated this ESI search or provide any details about how it is not proportionate to the needs of a case—a case that involves Defendants' charging of millions of dollars in improper interest charges. Although the Browns have requested that Defendants reconsider their position, Defendants have stated that they will not conduct any email search for responsive information in this case.

As a result, the Browns request that the Court order Defendants to implement an ESI search of their email communications to locate responsive documents. The Browns ask that Defendants be required to provide them with the parameters of this search so that they can confirm that the searches will return the information sought by these requests.

**H.    Defendants have failed to identify the relevant witnesses.**

The Browns served interrogatories asking Defendants to identify witnesses with knowledge about the events described in the complaint and to summarize their knowledge. Ex. 4 at Interrog. 1; Ex. 6 at Interrog. 1. Relatedly, the Browns asked Defendants to produce an organizational chart, so that the Browns could identify relevant witnesses to depose. Ex. 5 at Req. 14; Ex. 7 at Req. 12. Although Defendants identified a few individuals in response to these requests, there are critical witnesses omitted from their response. For example, Defendants did not identify the individual(s) who investigated and responded to the Browns' Qualified Written Request. The Browns also learned during Mr. Ross's deposition that ███████████████

████████████████████████████████████

████████████    That person has not been identified in this response. Not a single employee or

22

individual associated from Star 214 has been identified. And no compliance individuals or other witnesses that worked on the Browns' loan, other than Mr. Ross, has been identified.

The Browns have therefore been left in the dark about who at Star 214, Statebridge, or Shelving Rock knows what about the events that necessitated their lawsuit. Not only have Defendants deprived the Browns of learning that information, but the prosecution of their case has been hindered by their counsel's inability to determine which witnesses should be deposed.

Because the Browns are entitled to know who knows what about the events giving rise to their lawsuit, the Court should order Defendants to provide a complete list of potential witnesses and a summary of each person's knowledge.

## I.    Defendants' general objections in their "preliminary statement" should be stricken.

When they served their objections, Defendants raised several general objections. *See* Ex. 12.[8]    During the March 28 meet and confer, the Browns' counsel asked that these general objections be withdrawn. Rather than withdraw the objections, however, Defendants merely "restyled" their general objections as a "preliminary statement" in their responses. Regardless of Defendants' caption, they still generally object to every single request on several grounds, including relevance, overbreadth, undue burden, proportionality, harassment, confidentiality, duplication, vagueness, among other things. These are exactly the sort of objections that this Court has repeatedly rejected. *Spendlove v. RapidCourt, LLC*, No. 3:18-cv-856, 2019 WL 7143664, at *2 (E.D. Va. Dec. 23, 2019) ("[O]bjections must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 11504623, at *2–4 (E.D. Va. Mar. 1, 2017); *Barb v.*

---

[8] Plaintiffs have attached only the relevant portions of the objections and combined them into a single exhibit to reduce the size of the exhibits before the Court.

*Brown's Buick, Inc.*, 2010 WL 446638, at *1 (E.D. Va. Feb. 2, 2010); *Cappetta v. GC Servs. Ltd. P'ship*, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008). *See generally* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").

During the parties' April 9 meet and confer, the Browns' counsel again asked that these objections be withdrawn. Defendants refused, stating that the objections now complied with the Federal Rules because they had been "restyled" as a "preliminary statement." But this approach was rejected by Judge Payne in the *Spendlove* case. *Spendlove v. RapidCourt, LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *2 (E.D. Va. Dec. 23, 2019) (finding that nonspecific boilerplate objections were general objections not permitted under the Federal Rules, no matter how they were titled.)

Because these objections do not comply with the Federal Rules, the Browns ask that the Court strike them.

### J.      Defendants should be compelled to indicate whether they are withholding documents "subject to" their objections.

Defendants have failed to provide the withholding statements required by Rule 34, even though the Browns' counsel specially requested them in the March 28 meet and confer before Defendants' responses were served. Even worse, they answered every single request with the preface "subject to and without waiving the foregoing objections." These responses do not comply with the Federal Rules.

First, "the practice of providing answers 'subject to' objections 'is confusing and misleading.'" *Brown v. Experian Info. Sols., Inc.*, No. 3:16-cv-670, 2017 WL 11632852, at *2 (E.D. Va. Apr. 17, 2017) (quoting *Turnage v. Clarity Servs., Inc.*, No. 3:14-cv-760, 2015 WL 5092695, at *2 (E.D. Va. July 22, 2015); *see also Henderson v. First Advantage Background Servs.*

24

*Corp.*, No. 3:14-cv-221, ECF No. 66, at 1–2 (E.D. Va.) ("[T]he court notes that defendant has made a number of discovery responses 'subject to' various objections. This amounts to no answer at all, for it says, essentially, 'here is some information, but there could be more that you are not getting.'"). But this is exactly what Defendants have done here: They raised several objections (including general objections) to every single document request and then answered the requests "subject to" those objections—leaving the Browns unsure of what is being withheld from discovery.

Of course, these responses are normally cured by service of the required Rule 34 withholding statements, which Defendants have also failed to provide, despite its promise to do so. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.").

Without the required withholding statements, it is impossible for the Browns to determine which responses are complete, and which are not. To avoid such confusion, district courts within the Fourth Circuit routinely order litigants to provide withholding statements in accordance with Rule 34. *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15-cv-391, ECF No. 132 at 3–4 (E.D. Va. Mar. 1, 2017); *Futreal v. Ringle*, No. 7:18-cv-00029-FL, 2019 WL 137587, at *9 (E.D.N.C. Jan. 8, 2019) ("Rule 34 requires that when a party objects to a rule, it 'must state whether any responsive materials are being withheld on the basis of that objection.' Enterprise's responses do not comply with this requirement, but its representations to the court indicate that it is not withholding any more responsive documents to these Requests. Given that there are no additional documents to produce, the court will order Enterprise to supplement its responses to comply with Rule

34(b)(2)(C).”); *Dickman v. Banner Life Ins.,* No. CV RDB-16-192, 2017 WL 4342064, at *6 (D. Md. Sept. 28, 2017).

To be clear, the Browns' concern does not value form-over-substance—Defendants are withholding documents, as explained above. There are very likely other documents, and if documents simply don't exist, the Browns are entitled to know that as well. The Court should compel Defendants to provide withholding statements for each of the Browns' documents requests.

## CONCLUSION

Defendants have failed to provide much of the documents and information that the Browns have requested in discovery. All the information that the Browns seek in this motion is relevant to their RESPA and FDCPA claims or to class certification. The Court should overrule Defendants' objections and require them to produce the discovery described above.

Respectfully submitted,
**PLAINTIFFS**

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiffs*