**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DANIELLE BROWN AND ROY BROWN, *on behalf of themselves and all similarly situated consumers*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STAR 214, LLC and STATEBRIDGE COMPANY, LLC,<br><br>                    Defendants. | Civil Action No. 1:24-cv-1964 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL

Defendants Star214, LLC ("Star214") and Statebridge Company, LLC ("Statebridge") (together, "Defendants") through undersigned counsel, hereby submit this Memorandum in Support of Opposition to Plaintiffs' Motion to Compel ("Opposition").

### INTRODUCTION

Plaintiffs' Motion to Compel is precisely the "unnecessary discovery motion" designed "to harass . . . or needlessly increase the cost of litigation" that the Eastern District of Virginia's Local Civil Rules and Federal Rule 26(g) seek to prevent. Plaintiffs filed this Motion just two days after a meet and confer during which they raised for the first time almost two dozen perceived discovery deficiencies, many of which form the basis of their Motion.[1] Underscoring

---

[1] The parties have continued to try to resolve these issues since Plaintiffs filed their Motion, including meeting and conferring on April 16, 2025—the first day Plaintiffs' counsel was available to do so—just hours before Defendants' Opposition was due to be filed. Based on the parties' discussion, Defendants believe the parties are in agreement as to which items discussed throughout this brief are not in dispute. But given that Plaintiffs had not withdrawn their Motion and would not do so before Defendants' Opposition was due, to avoid prejudicing their positions, Defendants had no choice but to file their Opposition before the deadline. Based on the parties' discussion,

the impropriety of Plaintiffs' Motion is that virtually all of the categories of documents Plaintiffs

seek to compel are not even in dispute.  Either Defendants have explicitly stated that they

anticipate producing the documents Plaintiffs seek to compel; have, in fact produced the

documents since the April 9 meet and confer (as they informed Plaintiffs they would do); or

Defendants have been clear about their willingness to consider Plaintiffs' position.  Had

Plaintiffs waited even just a week to file this Motion, the parties could have completed their

meet-and-confer efforts, and virtually all of the issues raised in this Motion would have been

resolved.

Only three categories of documents have been in dispute for more than the two days

preceding Plaintiffs' filing of the Motion (and likely will remain in dispute after the parties

continue to attempt to streamline issues requiring judicial intervention):  a time- and cost-

intensive custodian collection of emails cumulative of documents Defendants have already

produced; class discovery beyond Defendants' already gratuitous loan-level data production; and

complaints untethered to the issues Plaintiffs challenge in this case.  For these categories of

documents, the documents Plaintiffs seek are irrelevant and disproportional to the needs of the

case.  Accordingly, they are not discoverable under Rule 26(b).  The remaining issues in

Plaintiffs' Motion, as described herein, do not require judicial intervention.

**BACKGROUND**

**A.     Factual Background**

Plaintiffs in this case are mortgage borrowers who obtained a second-lien mortgage loan

on their residence from a third-party lender nearly 20 years ago.  ECF No. 3 ("Compl.") ¶ 50.  In

2010, Plaintiffs defaulted on their mortgage loan and received a loan modification.  *Id.* ¶ 51.

---

Defendants understand that Plaintiffs may file a notice narrowing the issues for discussion during the Motion to Compel hearing, scheduled for Friday, April 18, in service of which the parties have agreed to continue cooperating.

Thereafter, Plaintiffs defaulted again in 2013 and haven't paid their second mortgage since. *Id.* ¶ 57. The owner and servicer of Plaintiffs' mortgage loan at the time was a non-party to this litigation, Nationstar Mortgage (n/k/a Mr. Cooper) ("Nationstar"). *Id.* ¶ 53. Nationstar serviced the mortgage loan directly and eventually through its wholly owned subsidiary Veripro Solutions ("Veripro"). *Id.* ¶ 59. Defendant Star214 purchased the mortgage loan from Nationstar in November 2021 and, in June 2022, transferred the servicing of the mortgage loan from Veripro to defendant Statebridge. *Id.* ¶¶ 63, 66.

Plaintiffs' complaint alleges that, during its tenure as servicer, Veripro assessed interest to Plaintiffs' mortgage loan during a period of time when Veripro did not send monthly statements, which Plaintiffs contend was impermissible. *See id.* ¶ 71. Though neither Star214 nor Statebridge had anything to do with Plaintiffs' loan during this time, Plaintiffs contend that—years later after Defendants acquired an interest in Plaintiffs' loan—Defendants sent notices to Plaintiffs that included interest amounts that Veripro should never have assessed. *Id.* ¶ 72. Plaintiffs attempt to bootstrap this core contention into claims for alleged violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, 15 U.S.C. § 1692f(6) ("FDCPA"), based on monthly statements and foreclosure efforts Plaintiffs allege were improper because stated amounts due were temporarily incorrect; the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2) ("RESPA"), based on Statebridge's robust responses to Plaintiffs' August 2024 letter about the propriety of the amounts due; breach of contract, claiming Star214 failed to satisfy preconditions to foreclosure, notwithstanding that no foreclosure has occurred, because amounts due were allegedly incorrect; and for declaratory judgment, seeking a declaration that the interest Veripro assessed while not sending monthly statements was not properly assessed.

Star214 and Statebridge's Business

Star214 is a limited liability company that purchased defaulted/charged-off second-lien mortgage loans from the lender/previous owner of those loans, Nationstar.  Decl. of Joshua Ross ISO Opposition to Mot. to Compel ("Ross Decl.") ¶¶ 3, 5.  Star214 is managed by Shelving Rock, LLC, a full-service specialty asset manager focused on managing investments in residential mortgage loans and real estate.  *Id.* ¶ 3.  Neither Shelving Rock nor Star214 has ever originated or serviced mortgage loans.  *Id.*  Statebridge is a special servicer of mortgage loans that provides custom, high-touch special servicing and sub-servicing for the mortgage industry, interacting with borrowers, accepting payments, and offer foreclosure-avoidance/loss-mitigation options.  *Id.* ¶ 4.

Plaintiffs' Loan, Default, and Charge-Off

Plaintiffs obtained the mortgage loan at issue in this case—a second-lien mortgage loan on their property located in Loudon County—in March 2005.  Compl. ¶¶ 1–2.  After modifying their loan once due to default, they stopped paying their mortgage loan altogether in early 2013.  *Id.* ¶ 8.  With the loan in default for several months, the then-servicer of the loan, Nationstar, charged off Plaintiffs' loan.  *Id.* ¶ 10.  A charge-off is an accounting tool, consistent with Generally Accepted Accounting Principles, that reflects in a creditor's books that the creditor has determined that the borrower of the debt is unlikely to pay.  Charge-offs, however, do not absolve borrowers of their contractual obligation to pay, nor do they deprive mortgagees of their contractual right to exercise all rights and privileges under the note and deed of trust, including the right to assess interest.  *See* 12 C.F.R. § 1026.41(e)(6)(i)(B).  Plaintiffs' obligation to pay their mortgage loan has consistently remained in full effect since they obtained the loan in 2005.

All of this conduct—Plaintiffs' obtaining the mortgage loan; Plaintiffs' defaulting on

their loan; and the charge-off of Plaintiffs' loan—occurred many years before either Defendants in this case had anything to do with Plaintiffs' loan. *See* Compl. ¶¶ 49–63.

Regulatory Changes in October 2017

Until the Consumer Financial Protection Bureau ("CFPB") implemented 12 C.F.R. § 1026.41(e)(6), effective October 19, 2017, there was no limitation on a mortgagee's ability to assess interest during months when monthly statements were not sent for charged-off loans. Indeed, prior thereto, it was industry standard (and entirely consistent with the mortgage contracts into which borrowers entered with lenders) for interest and late fees to continue to accrue on loans in default, regardless of whether mortgagees had, as an accounting matter, charged the loans off. It was also industry standard to stop sending monthly mortgage statements to borrowers of charged-off loans, as the creditor had determined that collection efforts were unlikely to result in payment of the loan. Prior to October 19, 2017, there was no basis to challenge these practices.

Section 1026.41(e)(6) changed the regulatory landscape by enacting a rule that a "servicer may not retroactively assess fees or interest on the account for the period of time during which" a loan is charged off and no periodic statements were sent. 12 C.F.R. § 1026.41(e)(6). That rule remains in effect today.

At the time Section 1026.41(e)(6) went into effect, Plaintiffs' loan was still owned and serviced by Nationstar. *See* Compl. ¶ 63. At some point, Nationstar's wholly owned subsidiary Veripro took over the servicing function. *See id.* ¶¶ 60–61. During this period, either Nationstar or its wholly owned subsidiary serviced Plaintiffs' loan. *See id.*

Star214 Purchases Plaintiffs' Loan, and Statebridge Commences Servicing

In November 2021, Star214 purchased Plaintiffs' loan as part of a pool of loans from

Nationstar and transferred the servicing of the loan to Statebridge in or around June 2022, at which time Statebridge immediately began sending monthly statements to Plaintiffs. *See id.* ¶¶ 63, 66.

Shelving Rock Identifies Veripro's Issue and Fully Remediates Borrowers

Following the servicing transfer to Statebridge, Shelving Rock discovered that Veripro had continued to assess interest to loans in months when it did not send monthly statements after the CFPB's 2017 regulation had taken effect. Ross Decl. ¶ 8. Shelving Rock, with Statebridge's cooperation, remediated borrowers for interest that Veripro had assessed to their loans post-October 19, 2017, during months when Veripro did not send monthly statements. *Id.* ¶ 9.

In total, the Shelving Rock-related entities voluntarily returned more than $12.5 million in interest across over 800 Statebridge-serviced loans—66 of which were owned by Star214—that were assessed interest by Veripro during periods when Veripro did not send periodic statements (the "Affected Loans"). *Id.* This total reflected the return of all interest assessed to Affected Loans during months when Veripro was not sending periodic statements dating back to October 19, 2017—12 C.F.R. § 1026.41(e)(6)'s effective date. *Id.* Moreover, the remediation amounts were returned regardless of whether the borrowers of the Affected Loans ever received (let alone received during the applicable limitations period) a debt-collection attempt reflecting interest that was arguably improperly accrued (the basis for Plaintiffs' FDCPA claims in this case). *Id.*

As a result of Defendants' proactive efforts, affected borrowers were fully remediated. Plaintiffs, for example, received a credit to their loan of $40,322.91 on April 22, 2024, reflecting a refund of all interest assessed to their loan from October 19, 2017 to June 2022, when Statebridge began servicing Plaintiffs' loan and began sending monthly statements. *Id.* ¶ 10.

<u>Written Communications and Foreclosure Efforts</u>

In addition to monthly mortgage statements, Defendants sent to Plaintiffs various written communications regarding their defaulted loan from 2022 through 2024. *See* Compl. ¶¶ 67–97. Among them was an August 14, 2024 notice of foreclosure sale, which, among other things, notified Plaintiffs of a foreclosure scheduled for October 16, 2024, as Plaintiffs had not paid their mortgage loan since 2013. *Id.* ¶ 88. Foreclosure, however, has not occurred in light of this dispute.

Also in August 2024, Plaintiffs sent a letter to Statebridge purporting to constitute a qualified written request under RESPA. *Id.* ¶¶ 83–87. Plaintiffs' requests were extensive, including requests for "all monthly statements for this loan since 2013," "any acceleration notices that you or any prior servicers have sent," and "all servicing notes regarding the loan." *See id.* Statebridge responded on October 1, 2024, with almost 200 pages of materials, as well as details including the amount needed to bring the loan current, the current payoff, and documents comprising no less than ten categories of information, including monthly statements, acceleration notices, and servicing notes. *See id.* ¶¶ 91–96.

**B.    Procedural History**

Plaintiffs commenced this action on November 2, 2024, by filing a putative class action complaint alleging the following causes of action: (1) violation of FDCPA, 15 U.S.C. § 1692e(10), against Star214 on a class-wide basis; (2) declaratory judgment under 28 U.S.C. § 2201 against Star214 on a class-wide basis; (3) violation of FDCPA, 15 U.S.C. § 1692e(10), against Statebridge on a class-wide basis; (4) breach of contract against Star214 on an individual basis; (5) violation of FDCPA, 15 U.S.C. § 1692e, against Statebridge on an individual basis; (6) violation of FDCPA, 15 U.S.C. § 1692f(6), against Defendants on an individual basis; and (7)

violation of RESPA, 12 U.S.C. § 2605(e)(2), against Statebridge on an individual basis.  Compl.

¶¶ 98–165.  Defendants timely answered the Complaint on January 10, 2025.  ECF Nos. 17, 18.

Plaintiffs' claims generally assert that Defendants sent false collection notices to the

extent that they included interest amounts that Veripro had assessed during months when Veripro

had not sent monthly statements, or listed a foreclosure date in error.  Compl. ¶¶ 67–82.

Plaintiffs also contend that Statebridge's response to their qualified written request under RESPA

was deficient.  *Id.* ¶¶ 91–96.  And Plaintiffs seek a declaration that the interest amounts Veripro

assessed during months when Veripro failed to send monthly statements were not owed.  *Id.*

¶ 122.

To date, Defendants have provided Plaintiffs with extensive discovery.  Defendants

responded to Plaintiffs' written discovery requests—Interrogatories and Requests for

Production—on April 3, 3025, and have produced over 1,680 pages of documents across four

productions.

## LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, Parties may obtain discovery

"regarding any non-privileged matter that is relevant to any party's claim or defense and

otherwise proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The scope of

permissible is not unlimited.  In determining whether discovery regarding nonprivileged matter

is "proportional to the needs of the case," courts are to consider "the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Accordingly, just

because a document may be relevant does not automatically entitled the requesting party to it.

*See id.*  The Court must limit discovery when, for example, the discovery sought is unreasonably cumulative or can be obtained from other sources.  Fed. R. Civ. P. 26(b)(2)(C).

<u>A**RGUMENT**</u>

Plaintiffs' Motion is premised largely on claimed "disputes" that Defendants either had only two days to consider, and thus are either (1) not properly before the Court because Plaintiffs have failed to meet and confer in good faith, or (2) relate to requests for documents that Defendants have been clear they do not dispute and are working towards producing.  As to these perceived issues, Plaintiffs' Motion is unnecessary.  Of the few items Defendants dispute, the discovery that Plaintiffs seek to compel is either irrelevant to their claims or Defendants' defenses, or they are not proportional to the needs of the case to justify the burden on Defendants to collect the requested materials (or both).

**I.    Plaintiffs' Motion to Compel Is Premature and Violates Federal and Local Rules.**

Federal Rule of Civil Procedure 37(a)(1) and this Court's Local Civil Rule 37 both require the movant to meet and confer in good faith to, as Local Civil Rule 37 states, "decrease, in every way possible the filing of unnecessary discovery motions."  The penalty for failing this standard is steep: "The presentation to the Court of unnecessary discovery motions . . . will subject such party to appropriate remedies and sanctions, including the imposition of costs and counsel fees."  E.D. Va. Local Civ. R. 37(G).  Plaintiffs have flouted this clear mandate by filing the instant Motion.

On February 9, the parties agreed to stay discovery in favor of settlement-driven discovery, Decl. of David L. Iden ISO Opp. to Mot. to Compel ("Iden Decl.") ¶ 2, Ex. A, but days before the parties' March 20 settlement conference, Plaintiffs unilaterally cancelled.  *Id.* ¶ 3, Ex. B.  With settlement tabled, the parties agreed that Defendants' deadline to respond to

outstanding written discovery would be April 3, 2025.  ECF No. 27, Ex. 3.  Before Defendants

had responded to Plaintiffs' written discovery or produced documents, Plaintiffs requested to

meet and confer.  The parties conferred on March 28, during which Plaintiffs raised seven

discovery items for discussion.  *Id.* ¶ 4, Ex. C.  Defendants took those issues under advisement

(and have resolved several already).[2]  *Id.*, Ex. C.

On Thursday, April 3, Defendants timely served their responses and objections to

Plaintiffs' Interrogatories and Requests for Production of Documents.  *Id.* ¶ 5, Ex. D.

Defendants also produced over 500 pages of documents on the same day, consisting of, among

other things, Plaintiffs' imaged servicing file; responsive policies and procedures; two

demonstrative payoff statements (which were not sent to Plaintiffs) showing Plaintiffs' payoff

total with and without the credit that Defendants had applied to Plaintiffs' loan; the debt

validation notice Statebridge sent to Plaintiffs when it boarded the loan; Plaintiffs' loan

modifications from before Star214's purchase of Plaintiffs' loan; thousands of fields and codes

from Statebridge's system of record (called Servicing Director); and letters to and from Plaintiffs

while Statebridge serviced Plaintiffs' loan.

In terms of class data, Defendants produced a chart consisting of over 800 borrowers'

loan-level data, including the redacted loan number, property zip code, current status of the loan,

loan's close date (if applicable), the date the loan received a credit returning interest Veripro

assessed when Veripro was not sending monthly statements, the credit amount, the loan's

---

[2] For example, Plaintiffs asked for interest assessed to be provided for specific periods in time, and Defendants
agreed to determine whether that would be possible.  Defendants have produced the interest-related information
available in Statebridge's system of record.  Plaintiffs also sought Plaintiffs' complete loan level data from
Statebridge's servicing platform.  Defendants have made clear several times that they do not dispute this request and
anticipate producing the requested data soon.  And Plaintiffs asked Defendants to withdraw all general objections,
and discussed further below, Defendants removed all references to "General Objections" in their responses and
objections to Plaintiffs' written discovery to clarify that none of the objections on which Defendants rely in the
Responses derive from the items listed in the "Preliminary Statement" section, and that section is simply a
preliminary overview.

servicer, the loan's investor (e.g., Star214 and other Shelving Rock-managed entities), the original date when the investor acquired the loan, the date when Nationstar/Veripro started and stopped servicing the loan, the total months that Nationstar/Veripro serviced the loan, the reported unpaid principal balance when the loan transferred from Nationstar, the interest rate reported by Nationstar, the next due date reported by Nationstar, and the number of months for which a credit was applied to the loan.

On Friday, April 4, Plaintiffs asked to discuss Defendants' recent document production and responses to Plaintiffs' written discovery. *Id.* ¶ 6, Ex. E. On Saturday, April 5, counsel stated they would provide an outline of topics for discussion. *Id.* ¶ 7, Ex. F. On Monday, April 7, counsel reiterated that they would send a "summary" of the items they "believe [they] need in discovery." *Id.* ¶ 8, Ex. G. Counsel failed to follow-through with their promise to send an outline or summary of issues before the April 9 meet and confer. Defendants nevertheless agreed to move forward with the meet and confer, in good faith, and the day before, on April 8, sought to narrow the issues by specifying that Defendants did not dispute producing servicing and mortgage sale agreements or additional loan level data for Plaintiffs' loan, among other things. *Id.* ¶ 9, Ex. H. During the conference, Defendants agreed to take counsel's points— which were extensive—under consideration and respond promptly. Specifically, Plaintiffs raised twenty-seven issues for Defendants' consideration, twenty-two of which were brand-new disputes. *Id.* ¶ 10, Ex. I. Plaintiffs' Motion to Compel is premised almost entirely on these newly raised issues. Despite Defendants' clearly stated agreement to work towards resolution on these myriad perceived issues, Plaintiffs filed this Motion to Compel less than 48 hours later, on April 11.

## II.    The Vast Majority of Issues in Plaintiffs' Motion Are Not in Dispute.

Nearly all of the categories of materials Plaintiffs seek to compel are not in dispute. As

11

Defendants have made clear to Plaintiffs in an April 15 letter, there is no dispute as to the following issues:

*Plaintiffs' Loan-Level Data.*  Defendants anticipate producing this soon but are troubleshooting internally to streamline what appears to be a time- and labor-intensive endeavor given system limitations.

*"Withholding Statements."*  Defendants explained on April 9 that they would evaluate—and Defendants are evaluating—whether their responses need to be modified to clarify their responses to requests for production.  After considering Plaintiffs' position, Defendants agreed in their April 15 meet-and-confer letter to supplement their Requests for Production within a reasonable time to include details about whether any responsive materials are being withheld on the basis of the objection.

*Preliminary Statement.*  As Defendants have explained to Plaintiffs multiple times, Defendants are not refusing to produce any materials on the basis of any general objections (titled "Preliminary Statement" precisely to avoid confusion).  Objections on which Defendants rely in responding to the requests and interrogatories appear in an entirely distinct section and are, as required by law, tailored to each request immediately above Defendants' response to each request and interrogatory.  In other words, there is no reason to "strike" Defendants' Preliminary Statement, as Plaintiffs request, Mot. at 24, because they do not modify or contribute to Defendants' narrowly tailored objections to each request and interrogatory, which appear elsewhere in the Responses.  *See Rangel v. Adtalem Glob. Educ., Inc.*, 2020 WL 4738951, at *1 (W.D. Tex. Aug. 14, 2020) (finding motion to strike moot when specific objections supplanted general objections); *see also Sobolik, Tr. for Sobolik v. Briggs & Stratton Corp.*, 2010 WL 11640189, at *8 (D. Minn. July 2, 2010) (finding motion to strike without merit if a party relies

on its specific objections to discovery requests).

      ***Agreements and Information About the Purchase and Servicing of Plaintiffs' Loan.***
Defendants made clear during the April 9 meet and confer that though they believe the requested documents are irrelevant, they would nevertheless produce responsive documents soon. Iden Decl. ¶ 11, Ex. J. Indeed, on April 14, Defendants produced Star214's purchase agreement with Nationstar for a pool of loans that includes Plaintiffs', and the servicing agreement between Star214 and Statebridge. This production also obviates Plaintiffs' Motion to the extent it seeks "information about the purchase and servicing of the Browns' loan," Mot. at 14, as the documents Defendants produced contain this information.

      ***Documents Transferred from Prior Investor and Servicer.*** Defendants have already produced "all of the documents that [Statebridge] received when the loan was [service] transferred," Mot. at 14. Iden Decl. ¶ 11, Ex. J. Even so, in the spirit of good faith and cooperation, Statebridge is taking steps to confirm this. *Id.* Likewise, Star214 has already identified "documents that it received as part of the purchase of the loan," Mot. at 14. ECF No. 31, Ex. 6. These include documents reflecting Plaintiffs' loan modifications in 2009 and 2010, the comment history of communications regarding Plaintiffs' loan from Veripro, and a spreadsheet of documents from Veripro's images manifest—all of which Defendants have produced to Plaintiffs. Star214's production of these documents belies Plaintiffs' false claim that Star214 has not "produced a single document." Mot. at 13. Like Statebridge, Star214 is taking steps to confirm that this collection is complete.

      ***Additional Documents Related to Plaintiffs' Loan.*** Defendants have already produced documents from the imaged servicing file, including the note and deed of trust, communications from and to Plaintiffs, the Transaction History and Payment History for the loan, and the

Comment History containing notes detailing communications and correspondence with third parties and Plaintiffs regarding Plaintiffs' loan.  Defendants are also collecting any remaining loan-level "data from their servicing platform regarding the Browns' loan" that Defendants have not already produced.  Mot. at 12; ECF No. 31, Ex. 4.  The loan-level data Defendants have produced includes over a dozen fields of data, including the loan's current status, remediation date and amount, number of months for which interest was returned as part of remediation, original acquisition date by Star214, start and end dates when Nationstar serviced the loan, and Plaintiffs' unpaid principal balance and reported interest rate at the time of transfer.   Iden Decl. ¶ 11, Ex. J.  Plaintiffs' claim that Defendants have "failed to produce the data from their servicing platform regarding the Browns' loan," Mot. at 12, is misleading.  In addition to the non-exhaustive list above of loan-level data for Plaintiffs' loan that Defendants have produced, Defendants produced to Plaintiffs a full data dictionary for every field of loan-level data available in Statebridge's servicing system of record and anticipated Plaintiffs would identify the data in which they were interested, which Defendants had agreed to collect.  Instead, Plaintiffs insist on collecting every available data field relating to Plaintiffs, regardless of relevance to Plaintiffs' claims.  As Defendants have told Plaintiffs, they are in the process of attempting to collect this massive data set.  Iden Decl. ¶ 11, Ex. J.

*Additional Discovery into Databases.*  To the extent Plaintiffs seek fields and codes specific to Plaintiffs' loan, *see* Mot. at 17, Defendants anticipate that the loan-level data that Defendants are working to collect will satisfy this request, as Defendants informed Plaintiffs before the April 9 meet and confer.  *Id.* ¶ 9, Ex. H.  As to schemas and dictionaries of Defendants' databases, Mot. at 17, Defendants recently became aware of help guides within the system of record, Servicing Director.  Defendants promptly collected those and produced them to

14

Plaintiffs on April 14.[3]

**_Documents Related to Investigation Underlying Statebridge's October 1, 2024 Letter._**
Defendants' understanding is that all information related to Defendants' investigation of Plaintiffs' purported QWR has been produced. But in the interest of good faith, Defendants are following up to confirm. Iden Decl. ¶ 11, Ex. J.

**_ESI Collection._** Plaintiffs argue that "Defendants have refused to search for or produce any ESI in this case." Mot. at 21. This is false, as Defendants have explained to Plaintiffs. Virtually every document that Defendants have produced in this case is electronically stored information, i.e., ESI. Thus, to contend that Defendants have "refused" to produce ESI is incorrect. Rather, the only dispute remaining on this point is the discoverability of custodial emails (discussed below).

**_Audits, Studies, or Research._** As Defendants explained in their responses to Plaintiffs' Requests for Production, after a reasonable search and inquiry, no nonprivileged, responsive "audits, studies, or research" exist. ECF No. 27, Exs. 5, 7.

**_Additional Witnesses._** Plaintiffs seek to compel the identification of additional relevant witnesses, and relatedly they seek to compel Defendants' organizational chart. Mot. at 22–23. Statebridge produced its organizational chart on April 14, and Star214 is determining whether a responsive document exists. Further, Defendants are working diligently to supplement their prior responses with the information Plaintiffs have requested: individuals who investigated and responded to the Plaintiffs' "QWR" (if any beyond individuals already identified).

---

[3] Plaintiffs also mention that they asked Defendants to "identify the databases that they used for various aspects of servicing." Mot. at 17. As Plaintiffs concede, Defendants provided that information, identifying Statebridge's system of record, called Fusion Servicing Director, and Security Connections, Inc. by First American Family. In light of Plaintiffs concession to "limit the requests to the Fusion Servicing Director by Finastra and Security Connections, Inc. by First American Family databases," Mot. at 18, no dispute remains as to the identification of relevant databases.

### III.   There Are Truly Only Three Categories of Documents in Dispute, and None Is Relevant or Proportional to the Needs of the Case.

A genuine dispute about the proper scope of discovery that Plaintiffs seek to compel exists over only three categories of documents: (1) custodian collection of emails cumulative of documents Defendants have already produced; (2) class discovery beyond the comprehensive loan-level data Defendants have produced for over 800 affected borrowers, far beyond the scope Plaintiffs' putative classes as defined; and (3) complaints untethered to Plaintiffs' case, which centers around an allegation about interest being assessed during periods when no monthly statements were sent.  These documents are irrelevant to the claims and defenses in this case and/or their collection are not proportional to the needs of the case when considering the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery relative to their likely benefit.

### A.   The Custodial Email Collection Plaintiffs Seek Is Not Warranted.

Defendants have produced all documents within Plaintiffs' loan-servicing file, the entirety of the comments log that constitutes the contemporaneous business record of all activity and communications relating to Plaintiffs' loan, and the transaction history for Plaintiffs' loan, which reflects all financial transactions posted to Plaintiffs' account.  The documents produced constitute all those stored in the ordinary course of business on a loan-level basis for Plaintiffs' loan—spanning the life of Plaintiffs' loan from 2005 through 2024—and include dozens of communications sent to and from Plaintiffs, Statebridge, and Defendants' foreclosure counsel regarding Plaintiffs' loan.  This collection of documents constitutes the entirety of the loan-level documents maintained in the servicing file for Plaintiffs' loan.  Defendants have also continued to comply with their discovery obligations to search for loan-level correspondence specific to Plaintiffs' loan and, on the morning of the day this opposition was due located additional

16

correspondence between Veripro and Plaintiffs. Defendants have already notified Plaintiffs that these documents will be forthcoming as soon as they can be collected and prepared for production.

Despite having received the loan-level file for Plaintiffs' loan in its entirety, Plaintiffs seek to compel defendants to undertake an undefined email search for any and all documents responsive to Plaintiffs' sweeping discovery requests. *See* Mot. at 13, 15–16. Such a comprehensive search is not justified here. *Broadband iTV, Inc. v. Hawaiian Telcom, Inc*., 2015 WL 12777960, at *3 (D. Haw. Aug. 13, 2015) (denying motion to compel cumulative email search as information could be obtained from other more convenient, less burdensome or less expensive source). As Defendants have explained to Plaintiffs many times, mortgage servicing is not performed via email. Rather, loan-level activity is recorded contemporaneously in the servicing system, and the records of those events are the comments log and transaction history, both of which have been produced. To the extent letters exist, such as those on which Plaintiffs' FDCPA and RESPA claims are based, those too have been produced.

Plaintiffs' claim they need emails to discover, for example, "how Defendants investigated and responded to the Browns' QWR," Mot. at 16, is perplexing because they have the response Statebridge sent to Plaintiffs' QWR and all ~200 pages of research documentation Statebridge sent to Plaintiffs with the written response. (Indeed, Plaintiffs assert a cause of action based on that very written response and collection of investigatory materials. Compl. ¶¶ 157–165.) Similarly, it is irrelevant "what diligence Defendants completed before they bought the loan." Mot. at 16. Further, "what actions Defendants took on the Browns' loan," Mot. at 16, are reflected in the imaged loan file and comment histories. And any issue about how far back Defendants remediated Plaintiffs' loan—i.e., going back to 2017 but not further—is irrelevant

because the statutes of limitation applicable to Plaintiffs' claims restrict their look-back period to, at the longest, November 2, 2019.[4]  Plaintiffs' attempts to force Defendants into a costly email collection serves no purpose but to drive up litigation expenses, and the Court should not countenance it.

### B. Defendants Have Already Gratuitously Produced Extensive Putative Class Member Data.

Through their Motion to Compel, Plaintiffs claim that "Defendants should be compelled to produce a list of all consumers that meet the class definitions listed in the Browns' Complaint."  Mot. at 12.  Defendants have not only done that already, they have also identified approximately 750 additional loans owned by other Shelving Rock-managed entities (in addition to Star214) that were assessed interest by Veripro during months when Veripro was not sending monthly statements.

Plaintiffs define their putative Statebridge FDCPA claim as follows: "All consumers: (1) with a loan that was in default at the time Statebridge became the servicer of the loan; (2) to whom Statebridge sent correspondence in the one year predating the filing of this lawsuit; (3) seeking to collect late fees, default related fees or interest **assessed by Statebridge** or its agent for time periods when the consumer did not receive monthly statements."  Compl. ¶ 124 (emphasis added).

Critically, and as Defendants have explained to Plaintiffs, Plaintiffs' putative Statebridge class is zero.  This is because Plaintiffs narrowly defined their Statebridge class to include only

---

[4] The statutes of limitations for Plaintiffs' FDCPA and RESPA claims are one year, likewise for their declaratory judgment claim, which carries the same limitations period as the substantive claim underlying it (here, the FDCPA). *Hendrick v. Caldwell*, 232 F. Supp. 3d 868, 882 (W.D. Va. 2017) (citing *118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 202 (2d Cir. 1982)).  Even applying the longest statute of limitations for any of Plaintiffs' claims—the five-year statute of limitations applicable to breach of contract claims, *Manotas v. Ocwen Loan Servicing, LLC*, 794 F. App'x 259, 264 (4th Cir. 2019)—the period would still only run from November 2, 2019. Accordingly, Plaintiffs are time-barred to look further back than 2019, thus mooting their argument that Defendants should have remediated beyond 2017.

borrowers from whom Statebridge "assessed" fees or interest "for time periods when the consumer did not receive monthly statements." *Id.* But it was the prior servicer, Veripro, that assessed interest while not sending monthly statements. There is no allegation in this case that Statebridge failed to send monthly statements (nor could there be any such allegation made in good faith).[5] Accordingly, since Statebridge did not, in the "one year predating the filing of this lawsuit," "assess" interest during periods when it did not send monthly statements, Plaintiffs' putative Statebridge class is a null set. *See id.*

Plaintiffs dispute that Statebridge did not assess interest, pointing to documents they claim show Veripro never assessed interest to Plaintiffs' loan, and instead implying that Statebridge did so. Mot. at 9–10. Plaintiffs' contention is baseless, and Defendants have provided Plaintiffs with extensive evidence that Veripro (not Statebridge) assessed the interest Plaintiffs challenge. For example, an August 2020 "Delinquent Interest Notice" from Veripro to Plaintiff Roy Brown, state that the number of days of interest assessed was 2,478, the total "Delinquent interest" as of that date was $58,621.39, and that Plaintiffs' total balance due was $157,794.60, Ross Decl. ¶ 10, Ex. C:

| • Your total accrued delinquent interest and new balance due included below: | |
|---|---|
| **AS OF DATE** | **09/01/2020** |
| | |
| Date of Transfer to Veripro Solutions: | 11/19/2013 |
| Principal Balance at the time of Transfer: | 95,476.50 |
| Interest Rate: | 9.050% |
| Days of Accrued Interest: | 2478 |
| Total Delinquent Interest as of 09/01/2020: | 58,621.39 |
| Total Balance Due as of 09/01/2020: | 157,794.60 |

Additionally, a Mortgage Loan Schedule from the Mortgage Sale Agreement between Star214 and Nationstar shows clearly that the total balance of Plaintiffs' loan at the time Star214

---

[5] And while Plaintiffs' Complaint ignores it, when Defendants learned of this practice, they returned those interest and fees promptly to affected consumers.

purchased it from Nationstar in November 2021 was $167,967, Ross Decl. ¶ 12, Ex. B.



| Loan # | Name | Address | City | State | Zip Code | Orig Date | Original Loan Amount | Interest Rate | Veripro Balance (11/5/2021) | Corporate Advances | Rate Type | Lien Position | Current P&I Pmt | Int Paid to Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ███906 | | | | | 92377 | 2/15/2006 | 64,548.00 | 5.800 | 55,653.34 | | GPM | 2 | 0.30 | 12/1/2012 |
| ███290 | BROWN, ROY | 43009 RUNNING RIDGE WAY | LEESBURG | VA | 20176 | 3/10/2005 | 88,954.00 | 9.050 | 167,967.00 | | Fixed | 2 | 718.95 | 12/15/2012 |

Moreover, a debt validation letter that Statebridge sent to Plaintiffs when it boarded

Plaintiffs' loan shows that, as of June 2022, Veripro had assessed interest in the amount of

$81,576.95, *id.* ¶ 11, Ex. A:



Our information shows:

You had a **Mortgage** from CENTEX HOME EQUITY COMPANY, LLC with account number ███3290

Current Principal Balance: $95476.5
*(Interest Bearing: $ 95476.5, Deferred: $ 0)*

Between 1/7/2013 and today:

| You were charged this amount in interest: | $81576.95 |
|---|---|
| You were charged this amount in fees: | $0 |

You paid or were credited this amount towards the debt: $0

**Total amount of the debt now:    $ 177681.01**

With the putative Statebridge class at zero, Plaintiffs are left with seeking class data only

for the putative Star214 classes.  Plaintiffs define their putative Star214 FDCPA class as follows:

"All consumers: (1) with a loan that was in default at the time Star 214 became the owner of the

loan; (2) to whom Star 214 or its agent sent correspondence in the one year predating the filing

of this lawsuit; (3) seeking to collect late fees, default related fees or interest assessed by Star

214 or its agent for time periods when the consumer did not receive monthly statements."

Compl. ¶ 99.  They define their putative Star214 declaratory judgment class the same except they

remove section (2).  *Id.* ¶ 112.

As Defendants have explained repeatedly to Plaintiffs, Iden Decl. ¶ 11, Ex. J; ECF No.

31, Exs. 4, 6, Defendants have identified 66 potentially applicable loans.  And as discussed,

Defendants produced 13 fields of loan-level data for each of these putative class members,

totaling 858 unique data points.  Thus, Plaintiffs' accusation that "Defendants have refused to provide any . . . loan level detail about the putative class members because a class has not yet been certified" is false.  Mot. at 10.

In fact, Defendants have gratuitously produced much more relevant data than that Plaintiffs now claim to seek.  Specifically, Defendants have produced almost 10,000 data points, relating to more than 800 borrowers with loans owned by a Shelving Rock-managed entity and serviced by Statebridge who were assessed interest by Veripro during months when Veripro was not assessing interest, spanning 13 unique fields of data.  *See infra* at 10–11 (listing fields).  In other words, Defendants voluntarily expanded Plaintiffs' putative Star214 class definition far beyond Star214 to encompass all Shelving Rock-managed loans.

Plaintiffs are not entitled to class data beyond what Defendants have already gratuitously produced.  For example, Plaintiffs are not entitled to putative class members' personal identifying information.  Mot. at 10.  Case law is clear that putative class counsel is not entitled to this type of sensitive information until they represent the parties, i.e., the Court has appointed them class counsel and certified a class.  *Gartrell v. J.J. Marshall & Assocs., Inc.*, 2019 WL 9089583, at * 2 (M.D. Fla. Dec. 10, 2019) (denying motion to compel class data as premature in FDCPA context as identities of potential class members are ordinarily not discoverable at the precertification stage of litigation);  *Pontones v. San Jose Rest. Inc*., 2019 WL 1548897, at *2 (E.D.N.C. Apr. 9, 2019) (denying motion to compel contact information about potential putative class members, such as names, addresses, and phone numbers, prior to class certification motion as premature);  *Mitchel v. Fortress FS, LLC*, 2014 WL 12776121, at * 1 (E.D.N.Y. Oct. 22, 2014) (denying motion to compel information on potential putative class members as attempts to obtain names and addresses does not fall under Rule 26(b)(1)'s concept of relevancy); *Bilek v.*

21

*Nat'l Cong. of Emps., Inc.*, 2022 WL 523108, at *1 (N.D. Ill. Feb. 22, 2022) (denying motion to compel putative class members' personal contact information including names and addresses as neither relevant nor proportional discovery prior to class certification). Indeed, until then, Defendants have an obligation to maintain the confidentiality of putative class members' personal identifying information. *Duffy v. Ill. Tool Works Inc.,* 2018 WL 1335357, at 6 (E.D.N.Y. Mar. 15, 2018) (denying motion to compel putative class members' contact information at the precertification stage due to potential class member's privacy interests in their confidential information). And Defendants intend to do so absent a Court order to the contrary. Moreover, for the reasons discussed above, *see supra* note 3, the statute of limitations applicable to Plaintiffs' claims preclude them from seeking to expand the temporal scope of their putative classes pursuant to their flawed argument that Defendants' remediation was only partial because it reached back to October 19, 2017, when the CFPB regulation took effect. Mot. at 9.

### C. *Defendants Have Already Agreed to Produce Prior Complaints Relating To Plaintiffs' Claims.*

Plaintiffs seek to compel from Defendants the identity of "every lawsuit in which they have been sued for any of the statutory violations alleged in the three years predating the filing of this lawsuit," as well as "notices or complaints received by Defendants from the Consumer Financial Protection Bureau, Federal Trade Commission, Better Business Bureau, state attorneys general offices, and consumers regarding Defendants' compliance with the FDCPA and RESPA, or the assessment of interest on mortgage loans for periods when monthly statements were not provided." Mot. at 18. Defendants have already agreed to produce responsive complaints to the extent they are for what Plaintiffs complain about here—that amounts due were incorrect because interest or fees were assessed to a charged-off loan for periods when no monthly statements were sent. Iden Decl. ¶ 11, Ex. J. Defendants' collection of responsive materials is in

process, and Defendants anticipate making a production soon. *Id.* Additionally, there is no dispute as to lawsuits filed against Defendants in the three years predating the filing of this lawsuit where a plaintiff has alleged a cause of action against Defendants for assessing interest on charged-off loans for periods when no monthly statements were sent. Mot. at 18–19. As Defendants have stated previously, there are no responsive lawsuits.

The dispute here centers around the relevance and proportionality of complaints whose only common thread with this case is that they also assert FDCPA and/or RESPA causes of action, but are otherwise totally untethered to the specific conduct Plaintiffs challenge here. Such complaints are irrelevant. Moreover, Plaintiffs would be equally capable of compiling these publicly available materials, thus militating further against requiring Defendants to collect them. *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 680–81 (D. Kan. 2015) (documents that exist in the public domain and are equally accessible to the propounding party need not be produced); *Valvoline Instant Oil Change Franchising v. RFG Oil, Inc.*, 2014 WL 2919518, at *7 (S.D. Cal. June 27, 2014) (denying motion to compel because documents requested were public record and equally accessible to all parties).

## CONCLUSION

In light of the foregoing, as well as the Declarations and Exhibits attached in support, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

///

///

///

///

///

Dated:  April 16, 2025

Respectfully Submitted,

_/s/      D. Sean Trainor_
D. Sean Trainor, VSB #43260
O'Melveny and Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Email: dstrainor@omm.com
Tel.: (202) 383-5114
Fax: (202) 383-5414
*Attorney for Star214, LLC and*
*Statebridge Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

Casey Shannon Nash
Kelly Guzzo PLC
3925 Chain Bridge Road
Suite 202
Fairfax, VA 22030
703-424-7571
Fax: 703-591-0167
Email: casey@kellyguzzo.com
*Attorney for Danielle and Roy Brown*

Dated: April 16, 2025

By:  _/s/ D. Sean Trainor_____
D. Sean Trainor, VSB #43260
O'Melveny and Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Email: dstrainor@omm.com
Tel.: (202) 383-5114
Fax: (202) 383-5414
*Attorney for Star214, LLC and*
*Statebridge Company, LLC*