**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| DANIELLE BROWN and ROY BROWN, *on behalf of themselves and all similarly situated consumers*,<br><br>Plaintiffs,<br><br>v.<br><br>STAR 214, LLC and STATEBRIDGE COMPANY, LLC,<br><br>Defendants. | Civil Action No. 1:24-cv-01964-WEF |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Danielle Brown and Roy Brown, on behalf of themselves and the Settlement Class Members, by counsel, submit this Memorandum in Support of their Unopposed Motion for Preliminary Approval of the Class Settlement.

**I.      INTRODUCTION**

Plaintiffs filed this Class Action against Defendants Star 214, LLC and Statebridge Company, LLC for their conduct in collecting or attempting to collect long-defaulted second mortgages. Plaintiffs alleged class claims against Star 214 and Statebridge under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(10) for making false representations about the amount of the putative class members' second mortgages in monthly mortgage statements and other correspondences. Plaintiffs also sought a declaratory judgment against Star 214 that any interest and fees assessed any periods in which Star 214 or its predecessors-in-interest failed to provide periodic statements, including interest and fees assessed before October 17, 2024, were waived and/or unenforceable. Plaintiffs also alleged individual claims against Star 214 and

Statebridge, including because they threatened foreclosure when they had no present right to possession of Plaintiffs' property in violation of § 1692f(6). Finally, Plaintiffs alleged an individual claim against Statebridge under the Real Estate Settlement Procedures Act ("RESPA"), because Statebridge failed to properly investigate and respond to Plaintiffs' Qualified Written Request in violation of 12 U.S.C. § 2605(e). Defendants denied each of Plaintiffs' allegations and asserted several defenses.

After months of litigation, Plaintiffs and Defendants entered into a Settlement Agreement and Release ("Settlement Agreement"), which Plaintiffs have attached to their Motion for Preliminary Approval.  The proposed Settlement affords significant relief to the Settlement Class Members that will, if approved, will provide for the following relief: 1) cessation of pending foreclosure activity for Settlement Class Members; 2) remediation of interest charges that were assessed when monthly statements were not sent from October 19, 2017 to when Statebridge started sending statements; 3) additional remediation for Shelving Rock and CAMG investors to remove interest from periods before October 2017; 4) providing clear communication to consumers about what they may owe on their second mortgages so they can understand their rights and responsibilities while offering consumers various loss mitigation options including loan modifications. Along with this equitable relief, class members will receive an automatic cash payment for their statutory damages. (Settlement Agreement § 2.2.)

Under Federal Rule of Civil Procedure 23, the parties now seek preliminary approval of the proposed class action settlement.  The parties request that the Court preliminarily approve the Settlement Agreement by entering the proposed Order Preliminary Approving Settlement and Directing Notice to Class.  A final motion and proposed order supporting the fairness of the proposed class action settlement will be submitted after Settlement Class Members have received

2

notice providing them an opportunity to object or opt-out and before the Court's Final Approval Hearing.

For the reasons explained below, the proposed class action settlement is reasonable, fair, and adequate, and the Court should preliminarily approve it.

## II.     SETTLEMENT TERMS

### A.     The Settlement Class

Under the Settlement Agreement, the parties agreed to resolve the claims of a nationwide class ("Settlement Class") defined as:

> **Statutory Damages Class.**  All natural persons within the United States and its territories who are obligors of a junior-lien mortgage loan secured by their primary residence, which loan was, as of May 14, 2025, actively serviced by Statebridge, and was more than 30 days past due at the time Statebridge began servicing the loan, in connection with which loan Statebridge sent correspondence between November 2, 2023 through May 14, 2025 that reflected an amount due that included late fees, default-related fees, or interest assessed for time periods when the loan was charged off and the person did not receive monthly mortgage statements.

(Settlement Agreement § 2.1.)  There are more than 1,000 Class Members. Because these Settlement Class Members have loans with different loan status (current vs. defaulted) and different lenders who are also participating in the Settlement (Shelving Rock and CAMG[1]), the Settlement also includes three subclasses for which each subclass may receive additional benefits:

> **Owner Entity Performing Loan Settlement Subclass.**  All natural persons within the United States and its territories who are obligors of a junior-lien mortgage loan secured by their primary residence, which loan was, as of May 14, 2025, owned by an Owner Entity and actively serviced by Statebridge, which loan (i) was less than 30 days past due as of May 14, 2025, or (ii) had made a full monthly payment in at least four of the six months preceding May 14, 2025, and in connection with which loan Statebridge sent correspondence between November 2, 2023 through May 14, 2025 that reflected an amount due that included interest assessed for time periods when the person did not receive monthly mortgage statements.

---

[1] CAMG, although not a party to this litigation, has agreed to participate in the Settlement and is a party to the Settlement Agreement. It has agreed to contribute both monetary and equitable relief.

This subclass includes consumers whose second mortgages were serviced by Statebridge and owned by a Shelving Rock entity and are current or less than 60 days past due as of May 14, 2025.

> **Owner Entity Defaulted Loan Modification Settlement Subclass.** All natural persons within the United States and its territories who are obligors of a junior-lien mortgage loan secured by their primary residence, which loan was, as of May 14, 2025, owned by an Owner Entity and actively serviced by Statebridge, in connection with which loan Statebridge sent correspondence between November 2, 2023 through May 14, 2025 that reflected an amount due that included interest assessed for time periods when the person did not receive monthly mortgage statements, and which loan is not part of the Performing Loan Settlement Subclass.

This subclass includes consumers whose second mortgages were serviced by Statebridge and owned by a Shelving Rock entity and more than 60 days past due as of May 14, 2025.

> **CAMG Additional Remediation Subclass.** All natural persons within the United States and its territories who are obligors of a junior-lien mortgage loan secured by their primary residence, which loan was, as of May 14, 2025, owned by a CAMG Entity, was previously charged off, and is actively serviced by Statebridge, and for which, prior to October 19, 2017, either 1) a prior servicer sent statements charging 0% interest, 2) the prior did not send statements because the loan was charged off, and/or 3) Veripro previously serviced the loan and represented that interest would not be charged, and for which Statebridge sent correspondence between November 2, 2023 through May 14, 2025, that assessed interest for time periods prior to October 19, 2017.

This subclass includes consumers whose second mortgages were serviced by Statebridge and owned by a CAMG entity.

These subclasses were necessary to offer class members relief that is specifically tailored to their loan's status, and to avoid confusion, class members will receive tailored notices that address the specific relief that they are eligible to receive under the Settlement.

### B.    Consideration to the Settlement Class

The proposed class action settlement provides both monetary and injunctive relief to Settlement Class Members.

First, for the monetary relief, the Settlement creates a Settlement Fund of $150,000--$100,000 contributed by the Defendants and $50,000 contributed by CAMG—that will be used to

make automatic payments to Class Members, without the need to file a claim form. Payments will be made *pro rata* to each eligible loan. In other words, each loan receives the same cash payment, and if multiple borrowers are associated with a loan, the automatic payment would be allocated and distributed equally to each borrower listed on that loan. (*Id.* § 2.2(a).)

In addition to this monetary relief, the Settlement Class Members will receive significant equitable relief based on the status and lender of their loan.

First, for all Settlement Class Members, Statebridge has agreed to pause all foreclosure activities for any Settlement Class Member, and this relief was already implemented as of July 27, 2025. (*Id.* § 2.2(b)(2)-(7).) In addition, for each Settlement Class Member, Statebridge will review their loan to determine whether the loan was assessed interest for any period from October 19, 2017, to the date when Statebridge started sending monthly billing statements, for periods when the loan was charged off and no statements were sent by a prior servicer, unless sending statements was prohibited by law. (*Id.*) If any loan reflects those interest charges, they will be removed from the Settlement Class Member's loan balance, and Statebridge will send the Settlement Class Member a letter notifying them of the amount credited to the loan. (*Id.*) Class Counsel has the data and will be able to verify and oversee the remediation process. This relief is significant, as it will prevent any Settlement Class Member from undergoing a foreclosure and will potentially remove tens of thousands of dollars, from their loan balance, making it easier for the Settlement Class Member to potentially resolve any delinquency and prevent a future foreclosure.

Second, for all Owner Entity Performing Loan Settlement Subclass Members, Statebridge will automatically remove all interest assessed for time periods when monthly mortgage statements were not sent in connection with the applicable loan, including any interest assessed before October 19, 2017. (*Id.* § 2.2(b)(4).)

Third, for each Owner Entity Defaulted Loan Modification Settlement Subclass Member, Statebridge will send them a loss-mitigation solicitation letter offering to either (1) accept a payoff of the loan at an amount that is discounted to remove all interest assessed for time periods when monthly mortgage statements were not sent in connection with the applicable loan, including interest assessed before October 19, 2017; or (2) modify the loan with an outstanding balance that is discounted to remove all interest assessed for time periods when monthly mortgage statements were not sent in connection with the applicable loan, including interest assessed before October 19, 2017, which offer shall be conditioned on the borrower's satisfactory execution of a loan modification agreement and timely payment of the first three consecutive payments due under the modification. (*Id.* § 2.2(b)(5).) If a Settlement Class Member fails to make the first three consecutive payments, the loan will automatically revert to its pre-modification terms. (*Id.*) If a Settlement Class Member elects not to pay off or modify their loan as part of this settlement, they do not release any of their claims against Statebridge or Star 214, other than their statutory damages claims (unless they opt out of that relief). In other words, if a Owner Entity Defaulted Loan Modification Settlement Subclass Member does not participate in the settlement's loss-mitigation relief, any pre-October 2017 interest would remain on his loan, but he would not release any of his claims against Defendants should they attempt to collect this amount. (*Id.* § 2.3(d).)

Fourth, for each CAMG Additional Remediation Settlement Class Member, CAMG has agreed to remove all pre-October 2017 interest for interest that was assessed either (1) while Veripro was the servicer or (2) during a month when the consumer received a statement indicating that the interest was zero percent. For any loans that were charged off, CAMG, CAMG will remove one-third of all interest accrued before October 19, 2017. *Id.* § 2.2(b)(9).) Statebridge will notify each of these subclass members the new principal and interest balance of the loan, the reason for

the remediation and offer loss mitigation options so the consumer has the opportunity to modify, payoff or otherwise negotiate a favorable outcome for the remaining balance of the loan. (*Id.*)

Finally, Statebridge has agreed to modify its onboarding procedures as part of the settlement. For any future servicing transfers, Statebridge will request investors to identify loans that were in charged-off status at the time of transfer. For those loans identified by investors, consistent with 12 C.F.R. § 1026.41(e)(6)(ii), and for as long as that provision's retroactive interest assessment rule remains in effect, unless investors provide evidence as to whether monthly billing statements were sent, Statebridge will board charged-off loans to reflect no interest due and owing for the period during which no monthly statements were sent from the later of (a) October 19, 2017, or (b) the date on which monthly billing statements ceased to be sent, until the date when monthly billing statements resumed being sent. (*Id.* § 2.2(b)(8).) This change will ensure that no consumers are the victims of the improper interest charges that the Plaintiffs and Settlement Class Members faced in this case.

The relief provided by the proposed settlement is significant. Settlement Class Members will receive automatic monetary payment. More importantly, no Settlement Class Members will face foreclosure until their loan is examined for improper interest, and they have had a chance to enter loss mitigation that would bring their loan current and allow them to remain in their homes. The Settlement pauses foreclosure activity until- at earliest- the Effective Date of the Settlement. This equitable relief is significant, as many of these consumers are facing imminent foreclosure, including for amounts that they do not owe. The Settlement directly addresses that harm and provides relief that would not have been available had the case proceeded to trial, and the FDCPA does not allow injunctive relief, and the Declaratory Judgment Act cannot compel the Defendants to modify existing contractual terms. Accordingly, this Settlement achieves far more than the

Plaintiffs could have received on their best day at trial and will deliver that relief to the Settlement Class Members far sooner than with further costly litigation.

### C.    Class Action Fairness Notice

The Defendants will engage the Class Administrator to provide notice of the proposed settlement under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  (Settlement Agreement § 2.4(e).)

### D.    Attorneys' Fees, Costs, and Service Awards

Class Counsel will apply for attorneys' fees and costs of $900,00, subject to Court approval and without Defendants' objection.  (*Id.* § 3.2.)  Plaintiffs will also each apply for a $7,500 service award, without Defendants' objection, to compensate them for their efforts in prosecuting this case including, but not limited to, serving as a class representative, retaining counsel, answering discovery, sitting for depositions, and attending mediations.  (*Id.*)  Neither the awarded attorney's fees and costs nor the Service Award will be deducted from Class Member recovery.  (*Id.*)

### E.    Release of Claims

In return for this consideration, Settlement Class Members will provide appropriately-tailored releases based on the consideration that they receive from the settlement.

First, any class member who does not opt out of the statutory damages payment, except for those class members with a CAMG-owned loan, will release any statutory damages claims under the FDCPA or any state or federal law for the assessment or collection of interest on mortgage loans during periods when monthly mortgage statements were not provided. (*Id.* § 2.3(b).) Notably, these Settlement Class Members do not release any actual damages they may have.

Second, any Owner Entity Performing Loan Settlement Subclass Member (i.e., Shelving Rock class members with performing loans) who do not opt out of the settlement will release all

claims relating to the assessment or collection of interest on mortgage loans during periods when monthly mortgage statements were not provided during the Class Period. (*Id.* § 2.3(c).)

Third, any Owner Entity Defaulted Loan Modification Settlement Subclass Member (i.e., Shelving Rock class members with non-performing loans) who, as part of the settlement, effectuate a discounted payoff or execute a loan modification, will release all claims regarding assessment or collection of interest on mortgage loans during periods when monthly mortgage statements were not provided. (*Id.* § 2.3(d).)

Finally, any class members with a CAMG-owned loan will release all claims regarding the assessment or collection of interest during the Class Period, on mortgage loans during periods when monthly mortgage statements were not previously provided or there was a zero percent rate. (*Id.* §§ 2.3(e)-(f).)

Each of these releases are narrowly tailored to release only the specific harms addressed by the relief that each Settlement Class Member elects to receive from the Settlement.

### F.    Notice and Exclusions

Class Notice will be sent by U.S. mail, postage prepaid, to each Settlement Class Member. If approved by the Court, the Settlement Administrator, American Legal Claims Services, LLC, will mail the Class Notice to all Settlement Class Members on the Class List by October 27, 2025 within 21 days of receipt of the List.  (*Id.* § 2.4(d).)

If a Notice is returned as undeliverable, the Settlement Administrator will re-mail the Notice via standard U.S. Mail, postage prepaid, to those Settlement Class Members for whom an alternative mailing address can be reasonably located.  (*Id.*)  The Settlement Administrator will first attempt to re-mail the Notice if it received an address change notification from the U.S. Postal Service.  (*Id.*)  If an address change notification form is not provided, the Settlement Administrator

may attempt to obtain an updated address using reasonable and appropriate methods to locate an updated address. (*Id.*)

Additionally, the Settlement Administrator will post to the Settlement Class Website important settlement documents, such as the operative Complaint, the Notice, the Settlement Agreement, and the Preliminary Approval Order. (*Id.*) In addition, the Settlement Class Website will include procedural information about the status of the court-approval process, such as an announcement of when the Final Approval Hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed.

Any Settlement Class Member who wants to be excluded from the class must advise the Settlement Administrator in writing, and his or her opt-out request must be received by the Settlement Administrator no later than the opt-out deadline, which is 60 days from the initial mailing of the Class Notice. (*Id.* §§ 1.21, 2.5(a).) A Settlement Class Member's opt-out request must contain the Class Member's name, last four digits of his or her social security number and loan number. (*Id.*) Further, the Settlement Class Member must include a written statement that he or she wishes to be excluded from the Settlement Agreement, and the request must be signed and dated by the Member. (*Id.*) Requests for exclusion that do not comply with any of these requirements are invalid.

## III.    ARGUMENT

### A.    Certification Standard

Courts within the Fourth Circuit favor resolution of litigation before trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts." (citing *Williams v. First Nat'l Bank*, 216

U.S. 582 (1910))).  Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while reducing the burden on judicial resources.  As the court observed in *Stone*:

> In the class action context in particular, there is an overriding public interest in favor of settlement.  Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Rule 23 permits courts to preliminarily certify a class to carry out a settlement of the case.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 793–94 (3d Cir. 1995) (collecting cases).  A court may grant preliminary approval of a class action where the proposed class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  If the Court determines that a settlement class should be certified, it then should follow a three-step process before granting final approval of a proposed settlement.  *Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000).

First, the Court should preliminarily approve the proposed settlement.  *Id.* at 547.  Second, class members must be given notice of the proposed settlement.  *Id.*  Third, a final fairness hearing must be held, after which the Court should decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole and consistent with the public interest.  *Id.*  This protects the class members' procedural due process rights and allows the Court to fulfill its role as the guardian for the class's interests.  *Id.*  Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances."  *In re MicroStrategy,*

*Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).  Additionally, "there is a strong initial presumption that the compromise is fair and reasonable."  *Id.*

Rule 23 governs the certification of class actions.  In considering a settlement at the preliminary approval stage, the first question for the Court is whether a settlement class satisfies Rule 23's requirements, and thus may be conditionally certified for settlement purposes.  Under Rule 23(a), one or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class's interests.  Fed. R. Civ. P. 23(a).

Here, the parties have reached a proposed agreement on behalf of the Settlement Class, which should be certified.

### B.    The Settlement Class Meets the Certification Elements

#### i.    *The Settlement Class satisfies Rule 23(a)*

##### 1.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  There is no set minimum number of potential class members that fulfills the numerosity requirement.  *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984).  But where the class numbers 25 or more, joinder is usually impracticable.  *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (holding 18 class members sufficient).

The numerosity requirement is easily met here.  As detailed above, there are more than 1,000 Class Members, including Plaintiffs.  Joinder of this many individuals is neither possible

nor practical, so the first prong of the certification test has been met. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003).

### 2.    Commonality

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances in individual grievances among class members. *Id.* at 322; *Mitchell-Tracey v. United Gen. Title Ins.,* 237 F.R.D. 551, 557 (D. Md. 2006) (finding that factual differences among class members will not necessarily preclude certification "if the class members share the same legal theory").

Here, by definition, the Settlement Class Members share questions of law and fact. The Settlement Class Members allege that Defendants sent monthly mortgage statements and other correspondences that listed an incorrect amount due for the Plaintiffs' and Class Members' mortgages. The practices at issue are thus identical across all Settlement Class Members, and the legal theory—that the stated amount in the monthly mortgage statements and breach letters—was also common to all members. The theories of liability as to the Settlement Class Members therefore arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a).

### 3.    Typicality

13

In the typicality analysis, "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011).

Plaintiffs' class claims arise from a uniform policy of assessing interest to borrowers for periods when they were not sent monthly mortgage statements. This policy, which was the same for each Settlement Class Member, caused the incorrect statements and correspondences to be sent to the Plaintiffs and Settlement Class Members. As discussed in the previous section, these are the same claims and legal theories advanced on behalf of the Settlement Class Members. Thus, in seeking to prove their claims, Plaintiffs will advance the claims of Settlement Class Members. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

4.    Adequacy of Representation

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998)).

The adequacy of representation requirement is met here. Reaching this type of settlement took a lot of negotiation and creativity to address the alleged harm faced by the Class Members. Plaintiffs' counsel has handled several consumer-protection and complex class actions, typically as lead or co-lead counsel. *See Dreher v. Experian Info. Sols., Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014); *Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2017 WL 814252, at *13 (E.D. Va. Mar. 1, 2017) (collecting cases and stating, "This Court has repeatedly found that [proposed Class Counsel] is qualified to conduct such litigation. . . . This Court echoes the sentiments previously stated about [proposed Class Counsel] because they pertain here with equal vigor." (citations omitted)); *Burke v. Seterus, Inc.*, No. 3:16-cv-785, ECF No. 41, Fairness Hr'g Tr. at 9:19-22 (E.D. Va. Mar. 12, 2018) ("Experience of counsel on both sides in this case is extraordinary. Ms. Kelly and Ms. Nash and their colleagues are here in this court all the time with these kinds of cases and do a good job on them."); *Heath v. Trans Union*, No. 3:18-cv-720, ECF No. 61, Prelim. Approval Hr'g Tr. at 9:8-9 (E.D. Va. Aug. 6, 2019) (Kelly Guzzo's "reputation in this district, and I am sure in others, [is] sterling"); *Turner v. Zestfinance, Inc.*, No. 3:19-cv-293, ECF No. 95, Prelim. Approval Hr'g Tr. at 13:1-4, (E.D. Va. Feb. 24, 2020), ("[W]e have Ms. Kelly and Mr. Bennett here, who are well known to me as being experts in this field, but it looks like the other class counsel is like the all-star team of consumer litigation."); *In re Think Finance*, No. 17-33964, ECF No. 1432, Tr. of Proceedings at 40:18-21 (Bankr. N.D. Tex.) (the

15

court "had two or three sets of law students that sat through this, and each time I told them that when you come into this hearing you'll see some of the best lawyers in America, and I still feel like that today"); *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *8 (E.D. Va. Dec. 18, 2020) (finding that class counsel, including the lawyers at Kelly Guzzo, PLC, "have extensive backgrounds in complex and class action litigation and consumer protection litigation"); *Gibbs v. TCV V, L.P.,* 3:19-cv-789, ECF No. 97, Fairness Hr'g Tr. at 139:10-17 (E.D. Va. Mar. 25, 2021), ("The representation by class counsel is certainly adequate. I don't want to belabor the issue at the expense of folks, one, getting tired of hearing me, but, two, also maybe feeling a little too good about themselves.  But it is the case that the track record here and the success of litigating complex cases, and specifically in tribal payday lenders, is, I think, as high as it gets in this country."); (*see also* Declaration of Kristi Kelly ¶¶ 8-10 (attached as Ex. 1) ("Kelly Decl.").)

Plaintiffs also meet Rule 23's adequacy requirement.  They understand and have accepted the obligations of class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel who have handled many consumer-protection class actions.  (Kelly Decl. ¶¶ 8-10, 21.)  Plaintiffs and the Settlement Class Members alike seek relief for Defendenats' allegedly unlawful actions.  Plaintiffs are members of the Settlement Class and have no conflicting interest with other Settlement Class Members.  As a result, the Settlement Class Members are adequately represented to meet Rule 23's requirements.

   *ii.   The Settlement Class satisfies Rule 23(b)(3)*

The proposed settlement contemplates permitting opt-outs under Rule 23(b)(3).  An action may be maintained as a class action if the four Rule 23(a) elements described above are satisfied and, in addition, "the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action

is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

If the Settlement Class is to be certified under Rule 23(b)(3), the common issues of law and fact shared by the Settlement Class Members must "predominate" over individual issues. Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys*, 212 F.R.D. at 323 (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).

The predominance requirement is satisfied here for settlement purposes because the essential factual and legal issues for the Settlement Class Members' claims are common and relate to Defendants' standardized practices. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is necessary to satisfy predominance in a settlement class.

### 2. Superiority

Finally, the Court should determine whether a class action is superior to other methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in

17

controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability

of concentrating the litigation in one forum; and (4) manageability.[2] *Hewlett v. Premier Salons*

*Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219

F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is indeed the superior

method of adjudicating the controversy. *Talbott*, 191 F.R.D. at 106. In examining these factors,

it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights,

and the improbability that large numbers of class members would possess the initiative to litigate

individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In *Jeffreys*, for instance, the court found that because "the facts and issues involved are

identical for all class members, class members have little incentive and few resources to pursue

litigation on their own, the class members are dispersed over several states, and there are few

manageability concerns, the class action is the best method of resolving the matter." 212 F.R.D.

at 323. The same is true here. The Settlement Class Members' individual claims are small, thus

providing little incentive for individual litigation. *See Amchem*, 521 U.S. at 617 ("The policy at

the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights."

(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))).

A class action is superior to other available methods for the fair and efficient adjudication

of the case because a class resolution of the issues described above outweighs the difficulties in

management of separate, individual claims and allows access to the courts for those who might

---

[2] A trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23. *Amchem*, 521 U.S. at 620. Thus, this criterion is not material to the Court's analysis in this posture.

not gain such access standing alone, particularly given the small amount of damages that would be available to individuals. Moreover, apart from the fact that the proposed settlement allows a recovery of payments by Class Members without further proof of harm, certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit. Thus, both predominance and superiority are satisfied. For these reasons, the Court should conditionally certify the Settlement Class for settlement purposes.

### C.    The Settlement Satisfies the Requirements of Rule 23(e)(2)

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). When a court "reviews a proposed class-action settlement, it acts as a fiduciary for the class." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins.,* 28 F.4th 513, 525 (4th Cir. 2022). "In fulfilling this role, the district court must conclude that a proposed settlement is 'fair, reasonable, and adequate,'" which are the three requirements established by Rule 23(e)(2) of the Federal Rules of Civil Procedure. *Id.* (citing Fed. R. Civ. P. 23(e)(2)). "In determining whether a settlement is fair, reasonable, and adequate," Rule 23(e)(2) requires the court to consider:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

19

(iii)    the terms of any proposed award of attorneys' fees, including timing of payments; and

(iv)    any agreement required to be identified under Rule 23(e)(3);

(D)    the proposal treats class members equitably relative to each other.

*Galloway v. Williams*, 2020 WL 7482191, at *4 (E.D. Va. 2020) (quoting Fed. R. Civ. P. 23(e)(2)). In making this assessment, district courts are provided with "considerable deference" because "the court 'is exposed to the litigants, and their strategies, position[s], and proofs, and is on the firing line and can evaluate the action accordingly.'" *Lumber Liquidators*, 952 F.3d at 484 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)).

      *i.*    *Plaintiffs and Class Counsel Have Adequately Represented the Class.*

Rule 23(e)(2)'s first factor examines whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This assessment is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 13:48 (5th ed. June 2021 update)). Rule 23's adequacy requirements are met if: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class'[s] interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *Gibbs v. Stinson*, 2021 WL 4812451, at *16 (E.D. Va. Oct. 14, 2021) (quoting *Milbourne v. JRK Residential Am., LLC*, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014)).

This first factor is easily satisfied. Plaintiffs' interests and those of Class Members are fully aligned as they were all subjected to the same allegedly unlawful conduct. *See, e.g.*, *Stinson*, 2021 WL 4812451, at *16 (finding that plaintiffs were adequate in a comparable case because they had "no interests antagonistic to the class's interest" and shared "identical interest of establishing Defendants' liability based on the same questions of law and fact").

20

Class Counsel has also been practicing in the field of consumer protection for more than 19 years, and Class Counsel believes that this settlement is in line with comparable settlements over that time and provides important relief to consumers. (*See* Kelly Decl. ¶¶ 3-10, 17.) Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy*, 148 F. Supp. 2d at 665.

This settlement also follows significant discovery on multiple issues, including significant written discovery, depositions of several Statebridge and Shelving Rock[3] employees, and robust discovery motions practice, confirming that settlement was reached after both sides had an opportunity to evaluate their claims and defenses. Given the substantial relief afforded the proposed settlement—especially when contrasted against the risks associated with litigating this matter—it is fair and appropriate for approval. *See S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (concluding fairness met where "discovery was largely completed as to all issues and parties," settlement discussions "were hard fought and always adversarial," and those negotiations "were conducted by able counsel").

ii. *Negotiations Were at Arm's Length.*

The second factor examines whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Flint Water Cases*, 571 F. Supp. 3d at 780 (explaining that the second factor requires courts to "consider whether the negotiations were conducted at arm's length with no evidence of collusion or fraud"). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Id.* (quoting *UAW v. Gen. Motors, Corp.*, 2006 WL 891151, at

---

[3] Star 214 is an employee-less holding company, but is managed by Shelving Rock, so the individuals knowledgeable about Star 214 and its assets are Shelving Rock employees.

*21 (E.D. Mich. Mar. 31, 2006)).  Here, no evidence suggests the presence of collusion or fraud between the parties.

Indeed, the parties reached a settlement only after discovery was nearly completed. (Kelly Decl. ¶¶ 18-20.)  The Parties also attended a settlement conference with Magistrate Judge Fitzpatrick who oversaw the negotiation for the framework of this Settlement. (*Id.*)  And the relief provided under the Settlement, which is not conditioned on the award of attorney's fees to Class Counsel, confirms that the Settlement was not the result of collusion between the parties.

### iii.   *The Relief Provided to the Class is Adequate.*

Rule 23(e)(2)(C) requires the Court to consider whether the relief is adequate, considering:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  These subfactors overlap with the factors that the Fourth Circuit has held are required to evaluate a class settlement's fairness, reasonableness, and adequacy.  *Lumber Liquidators*, 952 F.3d at 484 n.8 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).  An analysis of each factor shows that this settlement is fair, reasonable, and adequate.

The first Rule 23(e)(2)(C) sub-factor requires the Court to evaluate the settlement against the costs, risks, and delay of trial and appeal.  This factor strongly supports approval of the settlement.  While Class Counsel believes in the strength of this case, they also acknowledge that there are risks associated with continued litigation.  Defendants believe that they had strong defenses that they could raise at summary judgment, including the issue of Article III standing. Were Defendants to dig in on their defenses, this case would involve substantial briefing, as well as a trial and likely appeal.  The settlement avoids this significant cost, risk, and time by providing

22

significant settlement benefits—including impactful injunctive relief and a cash payment—to the Class Members now in exchange for a narrow release.

Rule 23(e)(2)(C)'s second sub-factor requires the Court to evaluate the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims. Here, Class Members will receive automatic cash payments, without any claim form or proof of their damages. In addition, all will receive automatic forgiveness of any interest assessed after October 2017 for periods where the consumer was not sent monthly statements, and any loans in a defaulted status will be given an opportunity to be brought current through a loan modification or payoff that will include addition interest forgiveness for interest assessed before October 2017. Each similarly situated loan is treated in an identical matter. This is important because "[t]he use of objective criteria to determine settlement distribution is a hallmark of fairness." *Flint Water Cases*, 571 F. Supp. 3d at 781. Because the relief is granted uniformly based on objective criteria and requires no action by Class Members, this factor supports approving the Settlement.

Rule 23(e)(2)(C)'s third sub-factor requires the Court to evaluate the request for attorneys' fees, including the timing of the request. The focus of this analysis is whether there are signs that "counsel sold out the class's claims at a low value in return for [a] high fee." Conte & Newberg, *supra*, § 13:54. There are no such indications here. As outlined above, there is no sign that Class Counsel left any money or other relief on the negotiating table. Class Counsel reviewed thousands of Settlement Class Members' loan files to insure as much interest as possible is removed from these second mortgage loans. Indeed, the Settlement results in significant injunctive and monetary relief, including a chance to eliminate interest assessed before October 2017—an outcome that is an unsettled question of law.

Nor is this a situation where "the request for attorney fees is unknown and could upset the compensation to claimants at the time of final approval." *Flint Water Cases*, 571 F. Supp. 3d at 782. To the contrary, Defendants will pay attorney's fees and costs separately, subject to Court approval, and the amount awarded will not affect the benefits provided to the Settlement Class.

Finally, under Rule 23(e)(3), the Parties entered into a confidential settlement for Plaintiffs' remaining individual claims that were not resolved as part of the Settlement. CAMG also resolved the potential claims of three separate homeowners as part of the negotiation of the Settlement.

    *iv.    The Settlement Treats Class Members Equitably Related to Each Other.*

The final factor under Rule 23(e)(2) requires a court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D) (emphasis added). This factor considers whether class members have been treated in a fair and impartial manner, but "[t]here is no requirement that all class members in a settlement be treated equally." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 876 (S.D. Iowa 2020) (emphasis in original) (citation omitted). And when considering this factor, a court "must balance the claims of those with potentially substantial damages with those with potentially minimal or insignificant damages." *Id.* (citation omitted).

The settlement here achieves this balance. Class Members will automatically receive a cash payment that is calculated *pro rata* based on the number of eligible loans. Because each Class Member will receive the same payment or credit amount, the Settlement treats Class Members equitably relative to each other. As to the removal of interest, the Settlement Class Members will get this benefit based on the same objective criteria- whether there are no statements or zero percent statements.

**D.      The Proposed Notice and Notice Plan Satisfy Rule 23**

Following preliminary approval, class members must be given notice about the nature of the settlement and of their rights.  Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notice to the Settlement Class, an Exhibit to the Settlement Agreement, satisfies these requirements. (Settlement Agreement § 2.4.)

The proposed notice program will provide individual direct notice and claim forms via U.S. mail, postage prepaid. Because of the three Subclasses, there are four separate template notices that will each provide individualized information about the Class Members' specific loan, including the benefits each Class Member would be eligible for as part of this Settlement. (*Id.*)  If notices are returned as undeliverable, the Settlement Administrator will re-mail the Notice and Claim Form via standard U.S. Mail, postage prepaid, to those Settlement Class Members for whom an alternative mailing address can be reasonably located.  (*Id.*)  The Settlement Administrator will first attempt to re-mail the Notice if it received an address change notification from the U.S. Postal Service.  (*Id.*)  If an address change notification form is not provided by the U.S. Postal Service, the Settlement Administrator may attempt to obtain an updated address using reasonable and appropriate methods to locate an updated address.  (*Id.*)

Additionally, the Settlement Administrator will post important settlement documents to the Settlement Class Website, such as the operative Complaint, the Notice, the Settlement Agreement, and the Preliminary Approval Order. (*Id.*) In addition, the Settlement Class Website will include procedural information about the status of the Court-approval process, such as an announcement when the Final Approval Hearing is scheduled, when the Final Judgment and Order has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed.

The settlement's robust notice and administration plan will ensure the most Settlement Class Members receive the payments to which they are entitled. As the *Manual for Complex Litigation* recognizes, mail notice is the ideal method of informing class members of a class settlement where such members can be identified, while notice through an internet website is a supplemental means of providing notice. *See* Manual for Complex Litigation § 21.311; *see also Henggeler v. Brumbaugh & Quandahl P.C.*, 2013 WL 5881422, at *5 (D. Neb. Oct. 25, 2013) ("The court finds that the proposed notice is clearly designed to advise the class members of their rights. The Agreement provides for individual mailed notices to each of the class members. Individual notice is the best notice practicable.").

The Notice Plan here includes mailed notices and a Settlement Website, which, together, represents the "best notice that is practicable under the circumstances," and it therefore meets the notice requirements of Rule 23. The Notice and Notice Plan should thus be approved by the Court.

## IV.    CONCLUSION

The proposed Settlement is an excellent result considering the circumstances of the litigation and strength of Plaintiffs' case. The terms of the Settlement, as well as the circumstances of negotiations and its elimination of the further costs of litigating this case through trial and appeal, satisfy the structures for preliminary approval.

For these reasons, Plaintiffs request that the Court issue an Order that: (1) grants preliminary approval to the proposed settlement; (2) approves of the proposed Notice filed concurrently with the Motion for Preliminary Approval; (3) orders that the Settlement Administrator carry out the Notice Plan; (4) approves the appointment of American Legal Claims Services, LLC, as the Settlement Administrator; and (5) sets the date of the Final Approval Hearing at the Court's earliest availability, preferably on or about January 16, 2026..

Respectfully submitted,
**DANIELLE BROWN AND ROY BROWN**

_____/s/ Kristi C. Kelly_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Plaintiffs' Counsel*